P. A. NICHOLSON ET AL. v. EUREKA LUMBER COMPANY.

(Filed 11 September, 1912.)

1. Deeds and Conveyances — Probate in Another State — Female Probate Officer—Comity of Laws.

When it appears from the probate of a deed in the chain of title of a party to the action claiming the lands in dispute, that it was probated before "Delia Sadler, Notary Public" in another State, the position cannot be maintained that the probate is fatally defective, being taken by a woman, if such were made to appear, for it will be assumed that the notary was rightfully appointed in the State in which the deed was probated, and her act will be recognized as valid here.

2. Deeds and Conveyances—Identity of Grantor—Correspondence— Handwriting—Evidence.

In a controversy involving title to lands, wherein a deed from Mrs. D., the grandchild and heir at law of W., was relied on in the chain of title of a party, there was testimony tending to show that W. was dead and all of his children had died without descendants, except L., who married T., who died leaving two children, one of whom died and the other married D., who lived in Waco, Texas; that the witness had received several letters from Mrs. D. from Texas, about this land, which was correctly located in the boundaries of the disputed deed from her: Held, (1) evidence sufficient to be submitted to the jury that the conveyance was made by Mrs. D., the grandchild and heir at law of W.; (2) testimony of the witness that he had received and answered letters from Mr. D. concerning the lands, though he did not know of her husband except from the letters and had never seen her write, was competent under the attendant circumstances.

3. Deeds and Conveyances—Variation of Magnetic Needle—Instructions—Appeal and Error.

In an action involving title to disputed lands, an exception that the charge of the court ignored or disregarded evidence tending to show that a proper allowance for the variation of the mag-

netic needle would have given the land a somewhat different placing, cannot be sustained, it appearing that this theoretical variation was controlled to some extent by an old and marked line, without anything of record to show that the location would have been varied, and, further, that his Honor charged that the course should "be determined by the lines of the grant and the proper variation for the difference in time."

CLARK, C. J., did not sit.

APPEAL by defendant from *Webb, J.,* at May Term, 1912, of BEAUFORT.

Civil action of trespass and to try title to realty.

The jury rendered the following verdict:

1. Are the plaintiffs the owners of the land described in the complaint? Answer: Yes; all the lands lying east of the lines E down to 3, then to A.

2. Did defendant trespass on said land, as alleged? Answer: Yes.

3. If so, what damages are plaintiffs entitled to recover? Answer: Seven dollars and fifty cents ($7.50).

Judgment on the verdict for plaintiff, and defendant excepted and appealed.

*B. B. Nicholson and E. A. Daniel, Jr., for plaintiff.*
*Rodman & Rodman and Ward & Grimes for defendant.*

HOKE, J. Both parties claimed title to the land in controversy under Ruel Windley, deceased, the plaintiff by deed purporting to be from Sadie Delany and her husband, the said Sadie, *née* Sadie Tooker, being the grandchild and only heir at law of James Windley, to whom Ruel Windley had devised it. This deed, admitted in evidence over defendant's objection, was from Sadie Delany and her husband, Thomas, to P. A. Nicholson, plaintiff, bore date of 12 December, 1908, and had been duly registered in Beaufort County on acknowledgment formally correct as follows:

STATE OF TEXAS—MCLENNAN COUNTY.

I, Delia Sadler, a notary public in and for the said county of McLennan, do hereby certify that Thomas Delany and wife, Sadie Delany, personally appeared before me this day and

acknowledged the due execution of the within deed of convey-
ance; and the said Sadie Delany being by me privately exam-
ined, separate and ·apart from her said husband, touching her
voluntary execution of the same, doth state that she signed the
same freely and voluntarily, without fear or compulsion of her
said husband or any other person, and that she doth still volun-
tarily assent thereto. ·

Witness my hand and notarial seal, this the 14th day of
December, 1908.        ··            ·.        DELIA SADLER,
              *Notary Public, McLennan County, Texas.*

It was chiefly urged for error by defendant that there was
no testimony amounting to legal evidence that the Sadie Delany,
grantor in said deed, was the Sadie Delany, *née* Tooker, who
was the grandchild and heir at law of James· Windley, de-
ceased; but on the facts in evidence the position cannot be sus-
tained.   On this question, a witness, William Draper, testified
in substance that James Windley was dead and all of his chil-
dren had died without descendants except Lovey, who married
one Captain Tooker.   That she died leaving two children; one
was drowned in a millpond and Sadie Tooker, the surviving
child, married Thomas Delany, and was now in Waco, Texas.
That he had received several letters from her and answered
them, which he had at home, the letters being about this land.
There was other testimony from this witness as to this 100
acres, the land in controversy, which was the James Windley
land, and as to its correct location.   On cross-examination the
witness stated that this Sadie Tooker was named Sadie Delany
before she ever left Bath, N. · C.   That he had never seen her
husband and had never seen Sadie Delany write in her life.
Didn't know her husband except what was said about him in
these letters.   "That he answered the letters he received from
Mrs. Delany and received replies from her; that he got the
replies out of the postoffice, and had them at home now."   A
motion to strike out ·this testimony was properly overruled; and
the identity of name, the subject-matter of the correspondence,
and attendant circumstances, were, in our opinion, amply suffi-
cient to justify the conclusion, as stated, that the grantor in

plaintiff's deed and Sadie Delany, the sole surviving grandchild and heir at law of James Windley, were one and the same person. *Freeman v. Loftis,* 51 N. C., 524; 1 Greenleaf, sec. 43a (16th Ed.); Lawson on Presumptive Evidence, p. 309; 16 Cyc., p. 1055.

It was further objected that the acknowledgment is invalid because taken by a woman. The only evidence that the officer taking this acknowledgment was a woman is the fact that the certificate is signed "Delia Sadler, a notary public in and for said county of McLennan," and in favor of the stability of titles and the regularity of judicial proceedings we might, if required, rest the case here, on the position that it does not sufficiently appear that this notary was a woman, but whether man or woman, we think it entirely safe to hold that, having been entrusted by the State of Texas with a notarial seal and having acted and professed to act in that State as a notary public, it will be assumed that she was rightfully appointed to that office and that she acted rightfully in taking this probate, until the contrary is made to appear. As an open question, this would be so from convenience, and the position is, we think, in accord with authority. *Piland v. Taylor,* 113 N. C., 1; Jones on Evidence, sec. 41 (2d Ed.); Elliott on Evidence, sec. 103.

The controversy between these litigants was really one of boundary, dependent largely on the correct location of plaintiff's deeds, "Beginning on an oak at or near the head of Ashe Branch" and thence various specified courses and distances inclosing the property. Under a comprehensive charge the jury have established the location as contended for by plaintiffs, and after careful examination we find no good reason for disturbing their verdict.

The objection made, that the court in its charge ignored or disregarded evidence tending to show that a proper allowance for the variation of the magnetic needle would give the land a somewhat different placing, is without merit. It would seem from the testimony that the theoretical variation was controlled to some extent by an old and marked line, and, further, there

are no data in the record from which the Court could determine that any substantial change in the location would have resulted.

Apart from this, a perusal of his Honor's charge will disclose that he directed the jury to make the allowance for the variation which the facts would require, the language of the court in reference thereto being in part as follows: "The burden is upon the plaintiff to satisfy you by the greater weight of the evidence that the defendant has cut within their lines, the course of which will be determined by the lines of the grant and the proper variation for the difference in time."

We find no reversible error in the record, and the judgment in plaintiffs' favor is affirmed.

No error.

CLARK, C. J., did not sit in this case, being related to some of the parties; but on the collateral question as to whether the certificate of a notary public in Texas to a legal instrument is valid here or not, because it appears that she was a woman, observes:

That each State or country is sole judge of the qualifications for voters and for office therein, and that such matter cannot be inquired into in any other jurisdiction. In Great Britain the Chief Executive in two of its longest and most brilliant reigns—Queen Victoria and Queen Elizabeth—was a woman, and the same is true even of Russia and Spain, whose most brilliant reigns were those of Catherine the Great and Isabella.

In ten States of this country, and in many foreign nations, women have now equal suffrage with men, and usually the right of suffrage carries with it the right to hold office. While the women have the full right of suffrage in only ten States of this country, they vote in school matters and on local assessments in most of the other States.

These are matters for each jurisdiction to settle for itself, and when the certificate of a notary public is sent to this State from another under a notarial seal, our courts cannot go back of it to inquire into the qualifications of the officer. It cannot be doubted that a notary public is a public office, and "full faith

and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." Const. U. S., Art. IV, sec. 1.

At common law in England, women . have not only seven times held the highest office, as Queen, but also that of sheriff (1 Bl. Com., 339n) and others. Some courts in this country (but none in England) have held that at common law she could not be a notary public. 29 Cyc., 1068, 1071, where the matter is fully discussed.