Hillsborough, April 4, 1944. } No. 3456.

GEORGE B. WHELTON, *Ex'r, Appellee*

*v.*

MICHAEL MAGGIE DALY, *by his Attorney and Agent, Appellant.*

*Frank B. Clancy* and *Robert J. Doyle* (*Mr. Doyle* orally), for the plaintiff.

*Robert E. Earley* and *Thomas J. Leonard* (*John E. Allen* on the brief, *Mr. Leonard* orally), for the defendant.

PAGE, J. Prior to the hearing of the appeal on the merits, the plaintiff moved to dismiss on the ground that no valid appeal had been taken. The motion was based on the claim that the appeal bond was insufficient. The bond was satisfactory in form, was in the sum of one hundred dollars, and was conditioned to pay all such costs as should be awarded by the Superior Court against Michael Maggie Daly, who purportedly took the appeal. The bond was signed "Michael Maggie Daly by his Attorney and Agent Robert E. Earley" and by two sureties.

The claim that the bond was insufficient seems to rest solely on the assertion that Mr. Earley had no authority to take the appeal and to execute the bond on behalf of Mr. Daly. Upon the motion to dismiss for this reason, several documents were received in evidence without exception. One was a power of attorney under seal, purportedly signed by Michael Maggie Daly of Lislea, Drumshambo, County Lertrim, Ireland, appointing Robert E. Earley his "agent and attorney" to appear for him and act in his behalf in connection with "any and all matters of whatever kind, nature, and description, relative to, or, in connection with the Estate of my sister, Delia

Maher." It further granted to Robert E. Earley "full power and authority to act in and concerning the premises as fully and effectually as I might do if personally present." If the instrument was duly authenticated, the attorney had ample power to take the appeal and give the bond.

On its face the instrument bears the signatures of two witnesses and is dated August 14, 1941. Below appears his certificate: "Subscribed and sworn to before me this 14th day of August, 1941. Wm. Boyd. Notary Public Longford Ireland." Attached is a paper seal upon which have been impressed the words "William Boyd Notary Public Longford."

It is the position of the plaintiff that this power of attorney could not be found to be authenticated as the act of Michael Maggie Daly in the absence of proof of Daly's handwriting or proof that William Boyd in fact held the office of Notary Public. The seal of a foreign notary public has for over two hundred years been regarded as sufficient to authenticate the protest of commercial paper. *Beach* v. *Workman*, 20 N. H. 379, 383, and cases cited. In spite of this, some jurisdictions make a distinction between protests and other instruments. Nevertheless, the majority view seems to be that the notary's seal will *prima facie* authenticate any instrument. 7 Wig., Ev. (3d *ed.*), *ss.* 2161, 2165. Without the aid of statutory provisions permitting such authentication, this has been held as to the certification of oaths. *Denmead* v. *Maack*, 2 MacArthur (D. C.), 475; *Bigelow* v. *Company*, 7 Porto Rico Fed. 386; *Hayes* v. *Frey*, 54 Wis. 503, 521. And so of acknowledgments certified by a foreign notary. *Nicholson* v. *Company*, 160 N. C. 33; *Hicks* v. *Whiting*, 149 Tenn. 411.

The precise question has never been decided in this jurisdiction. In *Southerin* v. *Mendum*, 5 N. H. 420, an office copy of a power of attorney to convey land in New Hampshire, recorded here but purportedly executed before a notary public in Virginia, was held admissible on the ground that the original had been "acknowledged and recorded," without any other proof of execution of the original. There was no discussion in the opinion of the probatory effect of the notarial seal, though it was argued by counsel that the seal would not have authorized the introduction of the original without proof of the signatures of the principal and the subscribing witnesses. Unless recording gave some virtue to the instrument that it would not otherwise have possessed (and it is difficult to see how the recording of the instrument was any proof of its execution), the de-

cision amounted to a holding that the officially sealed certificate of the foreign notary was evidence of the due execution of the power of attorney.

We can take judicial notice that within the memory of those now living it has not been customary in this jurisdiction to require proof of the signature and authority of a notary public who in a foreign jurisdiction has attested an oath or acknowledgment to an instrument intended to be given effect here. All practitioners here may be taken to know, however, that the contrary is the custom of some states with reference to instruments executed here for effect in such states. It is evident that general professional understanding here has long been (whether or not on the supposed authority of *Southerin* v. *Mendum*) that a foreign notarial seal is sufficient *prima facie* authentication of a document executed elsewhere for use here. Common practice has always made common law. In view of *Southerin* v. *Mendum* and of what appears to be long-time professional understanding, and in further view of the desirability of a single harmonious rule with respect to the *prima facie* effect of a notarial seal, we adopt the view that this power of attorney was on its face authenticated by the notarial seal, though contradictory evidence would have been admissible.

But there is further evidence that Daly delivered the power of attorney as his act. The instrument came to Mr. Earley in an airmail envelope bearing stamps of Ireland and postmarked "Bealanthamor, Co. L'Droma." The postmark raises the inference that it was genuinely affixed at the place mentioned. 7 Wig., Ev. (3d *ed.*), s. 2152. It would be a reasonable inference that the place mentioned is the "Ballinamore, Co. Leitrim" appearing at the head of the covering letter, also in evidence without exception. This letter is on the stationery of Peter Canning, Solicitor, and is signed "P. Canning." It is addressed to Robert E. Earley. It announces that Mr. Canning acts in Ireland as solicitor for Michael Maggie Daly of Lislea, Drumshanbo, County Leitrim, and that Mr. Daly had called in connection with Earley's letter to Daly of July 29, 1941, enclosing a power of attorney for execution by Daly authorizing Earley to look after Daly's interest in the estate of Delia Maher. The letter, after this preamble, proceeds: "My client has now completed this Power of Attorney before Mr. Boyd, Notary Public, Longford and I enclose you same herewith and shall be glad if you will acknowledge receipt thereof as I am anxious to know if this document reached you safely." The envelope shows evidence of having been opened by

two wartime censors. With the other papers is a certificate, also in evidence without exception, dated August 27, 1941, authorizing Peter Canning of Ballinamore, County Leitrim, Solicitor, to export an article described as "Power of Attorney Michael Maggie Daly to Robert E. Earley . . ."

From this evidence it is inferable that Daly delivered the power of attorney to Canning and that Canning transmitted it to Earley. The only possible question would be whether it was the right Daly who delivered the instrument. If it can be properly inferred that we deal with Daly in his own person, the power of attorney, thus delivered, is sufficiently authenticated. Where a letter of A to B is answered by one purporting to be B, it is proper to infer that the real B and the purported B are one and the same, provided the answer comes back in due course of mail. It is a fair inference, considering the habitual accuracy of the mails, that the letter addressed to B reached the real B and that an answer, referring to the tenor of A's letter and coming back in due course of mail, leaves only a negligible chance that any other than B has become acquainted with the contents of A's letter so as to forge a reply. 7 Wig., Ev. (3d *ed.*), s. 2153. Since Earley's letter to Daly was dated July 29, and the power bears date of August 14, while Canning's letter is dated August 18 and the official certificate for export August 27, there is ample evidence that the mail took due course, wartime conditions considered. There is therefore sufficient evidence, in connection with the notarial seal, to authenticate the power of attorney.

For this reason, it was entirely proper for the Presiding Justice to overrule the preliminary motion to dismiss and to warn the plaintiff's counsel that if they still insisted that Daly did not execute and deliver the power of attorney, they should produce evidence on that issue. In spite of this warning, plaintiff's counsel proceeded to the trial on the merits without, as suggested, moving for a continuance in order to obtain further evidence. They must stand on the record as made, and that record sustains the Court's ruling.

The motions to dismiss on the merits were based on the claim by the plaintiff that there was no evidence to justify findings that the deceased lacked testamentary capacity or that she was unduly influenced to make the will. As far as the issue of undue influence was concerned, the motion was granted and that issue was withdrawn from the jury. The motion to dismiss as to the issue of testamentary capacity was denied, subject to exception.

Delia Maher was committed to the Nashua Memorial Hospital for

medical care on September 2, 1940. According to the hospital records, she was "irrational and extremely restless" at 9 P.M. on September 6. At eight o'clock in the morning of the 7th, she was "trying to get out of bed," and side boards were applied in order to prevent her from doing so. In the opinion of a medical witness, the patient's attempt to get out of bed indicated that she was "not responsible for what she was doing." At 12:45 P.M. on the 7th, Mrs. Maher was visited by her physician, Dr. Joyce, who testified that when he talked to her he could get no answer. "She couldn't understand anything I said." In his opinion she was unable to recollect the property she wished to dispose of, to understand its general nature, or to bear in mind who were her nearest relatives and to make an election upon whom and how she should bestow her property by will.

At 6:10 P.M., September 7, the nurse who cared for Mrs. Maher during the day entered in the record, "beginning to be slightly irrational—pulling at bed clothes and talking unintelligibly." Though this was the only time that day that the nurse entered the word "irrational," she nevertheless thought that the patient was irrational throughout the day, depending for that in part on an entry she made at 9:40 A.M. that Mrs. Maher kept throwing the bed clothes off. Though she admitted that her entry of 6:10 P.M. was probably more reliable than her memory, she yet testified to the memory that Mrs. Maher was irrational all day on September 7, that Mrs. Maher could not understand her, and that she could not understand Mrs. Maher. This nurse was not in the room when the will was drawn and executed.

At 2:45 P.M. on September 7, Mrs. Maher was visited by her counsel, who drew the will and saw to its execution. Counsel, of excellent reputation and experience, testified that Mrs. Maher told him clearly what she wished and that he drew the will in accordance with her instructions. He and another subscribing witness, who was in the room only during the acts of execution, were of opinion that Mrs. Maher was then of sound mind. Mrs. Maher died at 1:45 A.M. on September 8.

In this conflict of evidence, it was for the jury to determine what weight should be given to its various parts. We cannot say that the witnesses relied on by the defendant gave testimony that was conclusively incredible. The motions to dismiss on the merits and the motion to set the verdict aside were properly denied.

Dr. Joyce was permitted, subject to exceptions, to testify as

follows: "Q. Now, Doctor, I am going to ask you if in your opinion Delia Maher possessed sufficient mental capacity to be able to understand the nature of the act that she attempted to do in the afternoon at about — between two and three o'clock, namely, making a will? A. I wouldn't think so." The plaintiff's objection was two-fold: (1) that it did not appear the doctor knew the requirements for making a valid will, and (2) that "I wouldn't think so" was not responsive. The Presiding Justice thereupon attempted to clear up the nature of the response, saying: "I would say from what he says that he is answering the question in the negative. Aren't you, Doctor?" The witness answered: "Yes, sir, I didn't think she was in any condition to make a will." The plaintiff excepted to what the Court said to the witness.

If the question put by counsel was improper for generality, if it did not momentarily appear that the witness knew the requirements for making a valid will, if the first answer admitted of any doubt, and if the Presiding Justice was careless in the leading form of the question by which he sought to develop precisely what the doctor meant, the whole situation was freed from prejudicial error by the questions and answers that immediately followed: "Q. Now, Doctor, was she able in your opinion to recollect the property she wished to dispose of and understand its general nature? A. I do not think she was. Q. Now, Doctor, in your opinion was she able to bear in mind those who were her nearest relatives and to make an election upon who and how she would bestow the property by her will? A. No." To these questions also the plaintiff excepted. They went specifically to the elements of testamentary capacity, and were proper. *Carpenter* v. *Hatch*, 64 N. H. 573, 577. The doctor, because of his personal observation within two hours of the making of the will, and because of his study of the clinical record, was competent to give his opinions.

Other exceptions raising questions of evidence are taken to have been waived by failure to brief or argue them.

Though the transferred case mentions an exception by the plaintiff to the charge given to the jury, its nature does not appear either in the record or in the plaintiff's brief, so no question is presented for us. The exceptions to the denial of requests for instructions seem to have been waived.

*Decree for the defendant.*

All concurred.