529 P.2d 752

Alice Mayes BALLARD, Amelia Mayes Miller, John A. Mayes and Thurman Mayes, Plaintiffs-Appellants,

v.

J. W. MILLER and Black River Corporation, Defendants-Appellees.

No. 9828.

Supreme Court of New Mexico.

Nov. 22, 1974.

Rehearing Denied Jan. 2, 1975.

---

Burr & Cooley, William J. Cooley, Farmington, for plaintiffs-appellants.

Walker & Estill, John B. Walker, Carlsbad, Hinkle, Bondurant, Cox & Eaton, Harold L. Hensley, Jr., Roswell, for defendants-appellees.

## OPINION

MONTOYA, Justice.

This is an appeal from a judgment entered by the District Court of Eddy County, wherein Alice Mayes Ballard, Amelia Mayes Miller, John A. Mayes and Thurman Mayes (plaintiffs) sought cancellation of an oil and gas lease from plaintiffs as lessors to defendant J. W. Miller (defendant) as lessee. The other defendant Black River Corporation (the Corporation) was joined as being the beneficial owner of the oil and gas lease in question. Cancellation was sought on the grounds that defendants had failed to make payment or tender the delay rental due under the terms of the lease. From a judgment in favor of the defendants, this appeal followed.

The facts of the case were stipulated before trial. After trial, the district court made findings of fact. The pertinent findings are as follows. Plaintiffs are the owners, in equal shares, of all oil, gas and other mineral rights lying in and under the following lands in Eddy County, New Mexico:

"Township 26 South, Range 24 East, N.M.P.M.
 "Section 3: SE ¼ SW ¼
 "Section 9: SE ¼ NE ¼
 "Section 10: NW ¼, W ½ NE ¼."

On October 22, 1969, all the plaintiffs with their wives, except Thurman Mayes and his wife, executed and delivered to defendant an oil, gas and mineral lease. The only provision of that lease in controversy with respect to this suit is paragraph 4, which provides:

"4. If operations for drilling or mining are not commenced on said land or on land pooled therewith on or before one (1) year from this date, this lease shall terminate as to both parties, unless on or before one (1) year from this date lessee shall pay or tender to the lessor a rental of Three Hundred Twenty and no/100 Dollars ($320.00) which shall cover the privilege of deferring commencement of such operations for a period of twelve (12) months. In like manner and upon like payments or tenders, annually, the commencement of said operations may be further deferred for successive periods of the same number of months, each during the primary term. Payment or tender may be made to the lessor or to the _____ Bank of _____ which bank, or any successor thereof, shall continue to be the agent for the lessor and lessor's successors and assigns. If any such bank (or any successor bank) shall fail, liquidate, or be succeeded by another bank, or for any reason fail or refuse to accept rental, lessee shall not be held in default until thirty (30) days after lessor shall deliver to lessee a recordable instrument making provision for another method of payment or tender, and any depository charge is a liability of the lessor. The payment or tender of rental may be made by check, or draft of lessee, mailed or delivered to said bank or

lessor, or either lessor if more than one, on or before the rental paying date."

No instructions were given as to a depository bank pursuant to paragraph 4, supra. Thereafter, defendant transmitted the lease to plaintiff Thurman Mayes for execution by transmittal letter dated October 24, 1969, which among other things stated: "Please attach a note indicating what bank you would like your annual rental checks deposited with." Plaintiff Thurman Mayes and his wife executed the lease in Arizona and, together with a letter dated October 27, 1969, returned the executed lease to defendant. The transmittal letter stated in part: "My bank in Arkansas is The Citizens Bank, Marshal[1], Ark." This constituted the only instructions by plaintiffs to defendant as to a depository bank, or a mailing address for any of the plaintiffs. Defendant, through inadvertence, failed to insert the Citizens Bank of Marshall, Arkansas, in the lease form after receiving Thurman Mayes' letter, but a copy of his transmittal letter of October 24, 1969, and Mayes' reply letter of October 27, 1969, were placed in the files of the Corporation. Thurman Mayes, individually, was also the owner of 160 acres of other lands in the general vicinity of the lands involved in the above group lease. On October 27, 1969, Thurman Mayes and his wife mailed to defendant an oil and gas lease on their 160 acres of land, and in that lease the Citizens Bank of Marshall, Arkansas, was inserted as the depository bank. The Corporation was also the beneficial owner of this lease. Thereafter, on September 22, 1970, the Corporation, upon information contained in their files, mailed a check in the amount of $320 payable to all of the plaintiffs and their spouses. This check, in payment of the delay rental for the year beginning October 22, 1970, was mailed to the Citizens Bank of Marshall, Arkansas, was received prior to October 22, 1970, by the Citizens Bank, and thereafter was endorsed by all of the plaintiffs and cashed. The monies were then divided among the plaintiffs in proportion to their share of the property. No objection was ever made by any of the plaintiffs to the method of payment of the October 1970, rental. After making the October 22, 1970, delay rental payment, but before the October 22, 1971, delay rental payment was due, the Corporation drilled two test wells on land adjacent to plaintiffs' leased property. Both wells proved to be excellent gas producers. Plaintiffs Alice Mayes Ballard and John A. Mayes reside in close proximity to both of these wells and had actual knowledge of the drilling operations and the discoveries. In early October 1971, the Corporation, utilitizing the same method employed for the October 22, 1970, delay rental check, mailed to the Citizens Bank a check in the amount of $320 payable to all of the plaintiffs and their spouses. At the same time, the Corporation mailed a check to Citizens Bank for delay rental on the 160 acres leased from Thurman Mayes individually. Both of those checks were lost in the mail and never received by the Citizens Bank and were never returned to the Corporation. Upon learning that its delay rental check for the period commencing October 22, 1971, had been lost in the mail and not received by either the plaintiffs or the Citizens Bank, the Corporation tendered under cover of letter dated November 19, 1971, a substitute check in the amount of $320 to the Citizens Bank, which check was refused by plaintiffs on the grounds it was untimely made. The trial court also found that none of the plaintiffs ever objected to the use of the Citizens Bank as a depository, or objected to the delay rental check being sent to Thurman Mayes for 1970 and 1971. Further, no evidence was presented to the court to show that the defendants intended to terminate the oil and gas lease with the plaintiffs. On the contrary, all of the evidence submitted to the court manifests an intention on the part of the defendants not to terminate the lease.

Plaintiffs set forth eight points as grounds for reversal:

(1) That the trial court erred in altering the stipulation of material facts entered into by the parties;

(2) That no competent evidence was introduced which would alter the stipulation of material facts;

(3) That the court erred in refusing to cancel the oil and gas lease in question;

(4) That the acceptance by the plaintiffs of the 1970 delay rental check mailed to the Citizens Bank in Marshall, Arkansas, did not work an estoppel or waiver of any of plaintiffs' rights under the lease in question;

(5) That acceptance of the 1970 delay rental check did not establish a course of dealings between the parties;

(6) That the trial court erred in holding the plaintiffs are barred from recovery by estoppel;

(7) That findings of fact Nos. 19, 21, and 22 are immaterial and have no bearing on the case; and

(8) That the evidence in this cause consists primarily of stipulated facts and documents and, therefore, this court, on appeal, is not bound by the trial court's findings.

We believe that the following discussion of the first three points advanced by plaintiffs in urging reversal is dispositive of the appeal; hence, the remaining issues raised need not be considered.

Several weeks before trial, counsel for the parties entered into a stipulation of material facts, and one of their stipulations provided as follows:

"12. That none of the plaintiffs at any time material hereto ever designated, either orally or in writing the Citizens Bank of Marshall, Arkansas as their agent for the purpose of acting as a depository bank to receive the rentals payable under the terms of the oil, gas and mineral lease attached hereto as Exhibit A."

Shortly before trial, attorneys for defendants became aware of the existence of the October 24, 1969, letter of transmittal of the lease agreement to plaintiff Thurman Mayes in Arizona, wherein defendant Miller said: "Please attach a note indicating what bank you would like your annual rental checks deposited with." The attorneys for defendant also discovered a reply letter of October 27, 1969, enclosed with the signed leases. The letter is handwritten, the name "Thurman Mayes" is indicated as the writer, and the initials "M.M." appear on the left-hand margin of the letter. In the process of submitting the letter in evidence marked defendants' exhibit 1, the following testimony was adduced from the defendant Miller:

"Q. Was there any cover letter with the lease that was returned to you?

"A. Yes, sir, there was a handwritten cover letter.

"Q. Handing you what has now been marked Defendants' Exhibit 1, and ask you to state what that exhibit is, if you know?

"A. This exhibit is the cover letter that accompanied the returned executed lease to me.

"Q. And who is it purportedly signed by?

"A. It is signed, 'Very truly yours, Thurman Mayes,' with a 'M.M.' on the lefthand margin.

"Q. Are there any instructions in that letter in response to your request of designating a depository bank?

"MR. COOLEY: I am going to object to the question.

"THE COURT: The instrument will speak for itself. Read it.

"A. It says: 'My bank in Arkansas is the Citizens' Bank, Marshall, Arkansas.'

"MR. WALKER: We move for the introduction of Defendants' Exhibit 2— or 1, I'm sorry.

"MR. COOLEY: Your Honor, I object to this letter on the basis that there has been no proof of its authenticity as to who the author

of the letter is. It might have been written by Mr. Miller. I'm not saying that it was at all. That's not an accusation. All I'm saying is, that there is no authentication of this letter, the signature on this letter, and accordingly, is not admissible into evidence at this time until it is authenticated.

"THE COURT: The question is as to the legality of it, as to who wrote it. It could be that he received it. It will be introduced that he received it from—can you testify to anything about the envelope that it was received in or anything, Mr. Miller?

"A. No, sir, I do remember that it did accompany the return lease, the executed lease.

"THE COURT: Now, there's two leases. One of them—did it contain the property in Section 15?

"A. Yes, one of the leases was that Mr. Thurman Mayes owned individually and the other was the group lease.

"THE COURT: All right.

"MR. COOLEY: I didn't understand that.

"THE COURT: He said that one of the leases that was sent out there for signing was one that Thurman Mayes and his wife owned, Section 15, Northwest quarter, and the other one was the group lease, and those were the ones that were sent back. This letter accompanied the leases that were sent back with it.

"A. Yes, they were both together.

"THE COURT: I'm going to admit it for the purpose of showing it was received.

"MR. WALKER: We have nothing further from this witness.

"THE COURT: Cross examine."

In view of the foregoing evidence, the trial court made the following finding:

"11. Good cause having been properly brought to the Court's attention Stipulation of Material Fact No. 12 filed with the Court is amended as it appears to the Court that such stipulated fact was entered into inadvertently and mistakenly by counsel for Defendants, in that they were unaware of the existence of Defendants' Exhibit 1 at the time the stipulation was signed, and it further appearing that the enforcement to such stipulation Numbered 12 would work an injustice and it further appearing that such stipulation in order to be in harmony with the apparent intention of the parties and the spirit of justice and in furtherance of fair trials Stipulation of Material Fact No. 12, heretofore filed with the Court is amended to read as follows:

"That none of the Plaintiffs other than the Plaintiff Thurman Mayes, at any time material hereto ever designated, either orally or in writing, the Citizens Bank of Marshall, Arkansas as their agent for the purpose of acting as a depository bank to receive the rental under the terms of the Oil, Gas and Mineral Lease attached hereto as Exhibit 'A'."

■ Plaintiffs contend that the trial court erred in receiving such evidence and objected not only to its admissibility, but also its effect in altering the stipulation of material facts entered into between the parties before trial. They argue that the stipulation constituted a judicial admission, and that the material facts contained therein should not be altered. We approve the following statement concerning the effect of judicial admissions as contained in Vol. IX Wigmore on Evidence, § 2590 at 587–588 (3d Ed. 1940):

"The vital feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party making it, *i. e.* the prohibition of any further dispute of the fact by him, and of any use of evidence to disprove or contradict it. In view, however, of the commendable purpose which leads (or ought to lead)

to the voluntary making of admissions, it is always and properly said that the trial Court may in discretion relieve from this consequence."

In Southern Union Gas Co. v. Cantrell, 57 N.M. 612, 615–616, 261 P.2d 645, 647 (1953), we stated the following:

"* * *. Courts look with favor upon stipulations designed to simplify, shorten, or settle litigation and save time and costs to the parties, and such stipulations will be encouraged by the courts, and enforced by them, unless good cause is shown to the contrary. * * *"

In 73 Am.Jur.2d Stipulations, § 14 at 550–551, the rule as to the particular grounds when relief from the terms of a stipulation may be granted is stated as follows:

"It is generally held that relief may be afforded from a stipulation which has been entered into as the result of inadvertence, improvidence, or excusable neglect, provided that the situation has not materially changed to the prejudice of the antagonist and that the one seeking relief has been reasonably diligent in doing so. It is also generally recognized that relief may be had from a stipulation where there has been a change in conditions or unforeseen developments which would render its enforcement inequitable, provided there has been diligence in discovering the facts relative to the disputed matter, the application is timely, and the opposing party has not so changed his position as to be prejudiced to a greater extent than the applicant."

In Marrujo v. Chavez, 77 N.M. 595, 599, 426 P.2d 199, 201 (1967), where the stipulation in question involved a settlement, we said:

"Stipulation of settlement with judgment to be entered is regarded as removed from the ordinary stipulation, particularly procedural ones, which the court is free to set aside or not in its broad discretion and for the sake of convenience alone. * * *"

In the same case, 77 N.M. at 601, 426 P.2d at 202, we quoted from 83 C.J.S., Stipulations, § 35b(2) at 91, as follows:

" 'Courts may set aside stipulations where a mistake of fact is clearly shown, on such terms as will meet the justice of the particular case; but in order to warrant relief the mistake must be of a material character, such as will change the legal rights of the parties, and the mistake must be one which could not have been avoided by the exercise of ordinary care.' "

We next consider the contention raised by plaintiffs to the effect that no competent evidence was introduced which would alter the stipulation of material facts. This refers to the handwritten letter of transmittal from the plaintiff Thurman Mayes designating a depository bank for the lease rentals. The testimony regarding the introduction of the letter has already been detailed above. It is important to note that the objection made by plaintiffs' attorney was on the basis that no proof had been submitted as to its authenticity, and it was not "admissible into evidence at this time until it is authenticated."

There is evidence in the record as to the then address of Thurman Mayes; that the leases which were forwarded to him by transmittal letter reached him; that the leases were executed by him and returned to defendant Miller; that they were all received in evidence, and that those same leases were included in the envelope containing the disputed letter designating the depository bank. Furthermore, the disputed reply letter indicates the checks for the bonus payments on both the individual Thurman Mayes lease, as well as the group Mayes lease, were received, and the reply letter gives the name of a bank in Arkansas in response to the request made in the transmittal letter written by defendant Miller, which request was as follows: "Please attach a note indicating what bank you would like your annual rental checks deposited with."

In considering the authentication of a reply letter, McCormick on Evidence, § 225 at 552 (1972), says the following:

"One circumstance recognized as sufficient is the fact that the letter discloses knowledge that only the purported signer would be likely to have. Moreover, a convenient practice recognizes that if a letter has been written to X, and the letter now offered in evidence purports to be written by X and purports to be a reply to the first letter (that is either refers to it, or is responsive to its terms) and has been received without unusual delay, these facts authenticate it as a reply letter."

In Vol. VII Wigmore on Evidence Third Edition, § 2153 at 611–612 (1940), the following is stated:

"When a letter is received by due course of mail, purporting to come in answer from the person to whom a prior letter has been sent, there are furnished thereby, over and above mere contents showing knowledge of facts in general (*ante,* § 2148), three circumstances evidencing the letter's genuineness: First, the tenor of the letter as a reply to the first indicates a knowledge of the tenor of the first. Secondly, the habitual accuracy of the mails, in delivering a letter to the person addressed and to no other person (*ante,* § 95), indicates that no other person was likely to have received the first letter and to have known its contents. Thirdly, the time of the arrival in due course, lessens the possibility that the letter, having been received by the right person but left unanswered, came subsequently into a different person's hands and was answered by him. To this may be added the empirical argument that in usual experience the answer to a letter is found in fact to come from the person originally addressed:

" * * *.

There seems to be here adequate ground for a special rule declaring that these facts, namely, *the arrival by mail of a reply purporting to be from the addressee of a prior letter duly addressed and mailed,* are sufficient evidence of the reply's genuineness to go to the jury."

See also Gulf Refining Co. v. Bagby, 200 La. 258, 7 So.2d 903 (1942); Whelton v. Daly, 93 N.H. 150, 37 A.2d 1 (1944).

Accordingly, in view of the foregoing, we hold that there was competent evidence received by the trial court which would alter the stipulation of material fact, and that the trial court did not err in altering the stipulation.

■ Plaintiffs next contend that the trial court erred in refusing to cancel the oil and gas lease in question because the defendants failed to make a timely and proper payment or tender of the delay rentals due under the terms of the lease. The trial court, pursuant to the stipulated facts, found that the 1971 delay rental payment check on the lease was mailed by the Corporation to the Citizens Bank of Marshall, Arkansas, during the first week in October 1971; that the mailing occurred prior to the due date of the rental payment, October 22, 1971; and that the check was lost in the mail. The parties further stipulated and the trial court found that the check was never received by the plaintiffs, nor was it returned to the Corporation, nor had it been found up to the date of the execution of the stipulation by the parties. The court further found that when the Corporation was advised that the lease payment was not received, the Corporation under cover letter dated November 19, 1971, mailed a substitute check for $320. to the Citizens Bank of Marshall, Arkansas, which check was refused by plaintiffs as untimely made. The trial court concluded that there had been a timely tender of the check and the fact that such tender was lost in the mails, coupled with the Corporation's attempt to make a substitute tender upon discovery that the original tender was lost in the mail, manifested an intention on the part of defendants not to terminate the lease.

In 3 Williams Oil and Gas Law, § 606.6 at 185 (1972), the following is stated:

"When the rental payment is mailed to the lessor or to the depository bank in ample time for receipt on or before the rental payment date but by reason of a failure of the mail, the payment does not reach the lessor on time. In cases of this kind it is generally held that the lease continues in effect. * * *"

In the case of Gloyd v. Midwest Refining Co., 62 F.2d 483, 486 (10th Cir. 1933), involving an "unless" lease located in Lea County, the court in an opinion written by Judge Phillips refused to permit termination of the lease, declaring:

"When the lessee in an 'unless' lease in good faith manifests his intention to continue the lease by undertaking to pay such rental through a method and means customarily used in such transactions, in ample time for the payment to reach the lessor or the agreed depository on or before the due date, but due to accident or mistake such payment fails to reach the lessor in time, the lease is not, because of such failure, automatically terminated. This is true because the acts of the lessee manifest an intention not to terminate the lease. Oldfield v. Gypsy Oil & Gas Co., 123 Okl. 293, 253 P. 298; Brazell v. Soucek, 130 Okl. 204, 266 P. 442. * * *"

Both parties concede that the lease in question herein is an "unless" type of lease. We hold that the Gloyd case, supra, is controlling and that under its reasoning the trial court did not err in refusing to cancel the oil and gas lease in question.

Plaintiffs cite the case of Phillips Petroleum Co. v. Curtis, 182 F.2d 122 (10th Cir. 1950), arguing that the Gloyd case, supra, is not applicable and that the reasoning of the Phillips Petroleum Co. case should be followed. It is interesting to note that Judge Phillips authored both opinions. However, we feel that the cases are clearly distinguishable in that Oklahoma law had to be adhered to in the Phillips Petroleum

Co. case, while in the Gloyd case New Mexico law had to be applied. Another distinguishing feature is that in the Phillips Petroleum Co. case the rental payment was not made due to an error on the part of an employee of Phillips Petroleum Company, inadvertently concluding that the payment did not have to be made because the lease in that case was in effect and valid because of production; and that the error of such clerk did not constitute gross negligence. The court in Phillips Petroleum Co. v. Curtis, supra, upheld the termination of the lease, applying Oklahoma law where an "unless" lease is construed most strongly against the lessee and in favor of the lessor, and on the further ground that an "unless" lease is automatically terminated at the end of the term under Oklahoma law for failure of lessee either to commence a well or to pay delay rental on or before the specified date, by reason of agreement of the parties. The court also made the following statement (182 F.2d at 124):

"It will be observed that the error was made by an employee of Phillips, subject to its direction and supervision and not by an independent agent, such as the United States Post Office Department or a depository bank."

The factual situation in the instant case is more closely analogous to the situation in the Gloyd case. The tender of payment of the delay rental was clearly mailed for 1971 in sufficient time before the due date, and the only reason that it failed to reach the plaintiffs was that it was lost in the mail. Hence, the trial court did not err in refusing to cancel the lease in question.

We have previously concluded that the trial court did not err in altering the stipulation of the parties, and that the evidence received in connection therewith was competent. An examination of the record herein convinces us that the findings of the trial court and its conclusions therefrom are supported by substantial evidence. In view of our holding, the other issues

raised require no consideration by this court.

The judgment of the trial court is affirmed.

It is so ordered.

STANLEY F. FROST and MAURICE SANCHEZ, District Judges, concur.