2007-NMCA-154

172 P.3d 615

**Diana CORTEZ, Petitioner–Appellee,**

v.

**Sergio Rene CORTEZ, Defendant–Appellant.**

**No. 27,629.**

Court of Appeals of New Mexico.

Oct. 9, 2007.

Certiorari Granted, No. 30,717, Nov. 20, 2007.

Mary W. Rosner, Rosner & Chavez, LLC, Las Cruces, NM, for Appellee.

Shane A. English, Keithly & English, P.C., Anthony, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The issue presented in this case is whether depositing a check in the mail on the date that payment is due pursuant to a Stipulated Final Judgment of Dissolution of Marriage (Stipulated Judgment) satisfies the obligation to pay on that date. The district court concluded that the payment was timely. We hold that depositing the check in the mail on the due date did not constitute payment on that date because the terms of the Stipulated Judgment did not authorize payment by mail, and there was no course of dealing between the parties reflecting an agreement that depositing the payment in the mail constituted payment. Concluding that actual delivery of the payment by the deadline was required, we reverse.

## FACTS AND PROCEDURAL HISTORY

{2} Husband and Wife were both represented by counsel in the underlying divorce action. The case was resolved when they and their attorneys negotiated the Stipulated Judgment. The district court then approved the Stipulated Judgment and adopted it as its own final judgment. In pertinent part, the parties agreed, and the district court ordered, that the marital home was awarded to Wife. It was further agreed:

As long as [Husband] remains liable on the mortgage indebtedness, if [Wife] becomes more than sixty (60) days delinquent on either or both of the mortgage obligations, then [Husband] may, but shall not be obligated to, cure all or part of the delinquency and in that event he shall have a lien on the property for all sums he elects to pay. If [Husband] elects to pay the entire amount of the mortgage delinquency, he shall also have the right and option of

assuming and succeeding to all of [Wife's] right, title and interest in the property, and in that event [Wife] shall have the right to redeem the property from [Husband] by paying [Husband] all sums paid by him to clear the delinquency within thirty (30) days after he exercises the option to assume and succeed to [Wife's] interest.

{3} After the divorce, Wife fell more than sixty days delinquent on the mortgage. Husband elected to cure the delinquency by paying the delinquent amount due. By facsimile correspondence dated November 28, 2006, Husband's counsel notified Wife through her counsel that Husband had cured the delinquency and that he had elected to exercise his right and option under the Stipulated Judgment of assuming and succeeding to all of Wife's right, title, and interest in the property, and he further notified Wife of her right under the Stipulated Judgment to redeem the property from Husband by reimbursing him the delinquency paid within thirty (30) days from November 28, 2006. Wife's counsel responded that she was pursuing refinancing of the home and that once she confirmed the amount of money paid by Husband towards the mortgage, "she will reimburse him by December 28, 2006." Wife mailed a check to Husband for the correct amount on December 28, 2006, via overnight express mail. The first delivery attempt of the check was the next day on December 29, 2006, and it was not actually delivered to Husband until January 4, 2007. By letter dated January 5, 2007, Husband's counsel gave notice of his election not to accept the late payment and returned it to Wife's counsel.

{4} Husband then filed a motion in the district court to confirm that Wife had failed to exercise her right of redemption according to the terms of the Stipulated Judgment. Wife's response confirmed that the check was mailed to Husband on December 28, 2006, and asserted that the mailing constituted a timely redemption of the property pursuant to the Stipulated Judgment.

{5} Following two hearings and after considering the parties requested findings of fact and conclusions of law, the district court entered its findings of fact and conclusions of law. Therein, the district court noted that it was undisputed that Wife fell more than sixty days delinquent on the mortgage obligation and that Husband elected to pay, and did pay, the entire amount of the mortgage delinquency. Further, it was undisputed that Husband's counsel notified Wife through her counsel, via facsimile, on November 28, 2006, that Husband had cured the delinquency and that he elected to exercise his right and option under the Stipulated Judgment of assuming and succeeding to all of Wife's title, right, and interest in the property and that Wife had a right under the Stipulated Judgment to redeem the property from Husband by reimbursing him the amount of the mortgage delinquency within thirty days from November 28, 2006. Finally, the district court noted it was undisputed that Wife placed a redemption payment in the United States Mail properly addressed to Husband on December 28, 2006. The district court concluded as a matter of law that the redemption period ended on December 28, 2006, and that Wife's "deposit of the redemption payment in the mail on the payment due date fell within the redemption period and, pursuant to Rule 1–005 [NMRA], is timely." In its formal order denying Husband's motion to confirm that Wife failed to exercise her right of redemption, the district court stated, "Although actual delivery of the redemption payment was made after the expiration of the [thirty-day] redemption period, [Wife's] deposit of the redemption payment in the mail on the payment due date constitutes timely payment under the mailbox rule." Husband appeals.

**STANDARD OF REVIEW**

■ {6} Our standard of review in this case is de novo for two reasons. First, the relevant facts are undisputed. We therefore review de novo the legal conclusions made by the district court. *See Johnson v. Yates Petroleum Corp.*, 1999–NMCA–066, ¶ 3, 127 N.M. 355, 981 P.2d 288 (stating that when the relevant facts are undisputed, the legal interpretation of those facts is subject to de novo review on appeal). Second, a marital settlement agreement is a contract, and the rules of contract law generally apply to such

agreements. *See Herrera v. Herrera,* 1999–NMCA–034, ¶ 9, 126 N.M. 705, 974 P.2d 675 (holding that marital settlement agreements are contracts, subject to contract law). The general rules of contract interpretation are:

> Whether an ambiguity exists is a question of law to be decided by the court. This Court has held that a contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. The mere fact that the parties are in disagreement on construction to be given to the contract does not necessarily establish an ambiguity. In making its determination, the court must consider the agreement as a whole. Moreover, where the terms of an agreement are plainly stated, the intention of the parties must be ascertained from the language used. Absent a finding of ambiguity, provisions of a contract need only be applied, rather than construed or interpreted.

*Levenson v. Mobley,* 106 N.M. 399, 401–02, 744 P.2d 174, 176–77 (1987) (internal citations omitted). *See also Sitterly v. Matthews,* 2000–NMCA–037, ¶ 15, 129 N.M. 134, 2 P.3d 871 (stating that a settlement agreement is interpreted in the same way as any other contract, and "[w]hether a contractual provision is ambiguous is a question of law, which we review de novo").

**ANALYSIS**

■ {7} Husband argues that neither Rule 1–005 nor the "mailbox" rule apply because actual payment by Wife on or before the due date is required by the stipulated judgment for the redemption payment to be effective. We agree.

{8} Rule 1–005 does not apply to Wife's placing the payment in the mail on December 28, 2006. This Rule only applies to pleading and papers that relate to litigation that is actually before the district court, and there was no litigation pending before the district court when Wife mailed the payment to Husband. Rule 1–005 expressly states that it applies to an "order required by its terms to be served," to "every pleading subsequent to the original complaint," to papers "relating to discovery," to a "motion other than one which may be heard ex parte," and to "every writ-

ten notice, appearance, demand, offer of settlement, designation of record on appeal, and similar paper." The Rules of Civil Procedure govern the procedure in the district courts in all suits of a civil nature. Rule 1–001(A) NMRA. Since no civil action was pending when Wife mailed the payment on December 28, 2006, and mailing the payment was not a procedural act performed within the context of an actual civil action, Rule 1–005 does not answer whether Wife's payment to Husband was timely under the stipulated judgment.

■ {9} The "mailbox" rule provides that "a payment is made when a letter containing a remittance, properly addressed and with postage prepaid, is deposited into the mail where the custom of the parties authorizes payment by mail or when payment by mail has been authorized." 60 Am.Jur.2d *Payment* § 11 (2007); *see Schneider National Inc. v. State Taxation and Revenue Dep't,* 2006–NMCA–128, ¶ 13, 140 N.M. 561, 144 P.3d 120 (stating that the common law "mailbox" rule stands for the proposition that, "proof that a letter has been properly addressed and deposited in the mail gives rise to the presumption that it was received by the recipient in ordinary course"). There was no evidence of any custom between Husband and Wife about the matter before the court. We must therefore determine whether they otherwise agreed to payment by mail. The Stipulated Judgment provides that Wife shall have the right to redeem the property "by paying [Husband] all sums paid by him to cure the delinquency within thirty (30) days after he exercises the option to assume and succeed to [Wife's] interest." The agreement clearly and unambiguously requires payment. Thus, we must answer whether depositing a check in the mail itself constitutes "payment." We hold it does not.

■ {10} "Ordinarily, a check mailed on the last day of payment, and not received on that day, is not a timely payment." *United Secs. Corp. v. Franklin,* 180 A.2d 505, 511 (D.C.1962). In the absence of an express agreement that the payment can be mailed, or a course of dealing between the parties indicating assent to mailing, the authorities appear unanimous in concluding that mailing

a check does not constitute payment as of the date of the mailing. *See, e.g., Nguyen v. Calhoun,* 105 Cal.App.4th 428, 129 Cal. Rptr.2d, 436, 448–49 (2003) (stating the general rule that depositing a check in the mail does not constitute payment unless the creditor has directed that the payment be mailed, and merely supplying a mailing address does not constitute a direction to mail the payment); *Enriquillo Exp. & Imp., Inc. v. M.B.R. Indus., Inc.,* 733 So.2d 1124, 1126–27 (Fla.Dist.Ct.App.1999) (holding that simply placing a check in the mail does not constitute a payment, and "[i]n the absence of an express agreement otherwise, the debtor owes his creditor nothing less than the unconditional delivery of money on or before the last day specified for payment"); *Werne v. Brown,* 955 P.2d 1053, 1055 (Colo.Ct.App. 1998) ("Generally, payment by mail is not effective until receipt by the creditor, unless the creditor expressly, by implication, or through a course of dealing, directs or consents otherwise. If payment by mail is directed or authorized by the creditor, however, the time of delivery is the time that the payment, properly addressed with postage prepaid, is put in the mail."); *Buffalo Pipeline Co. v. Bell,* 694 S.W.2d 592, 596–97 (Tex. Ct.App.1985) (stating that there was not a proper or timely tender of payment in the absence of contractual provision for payment by mail, or an established custom or course of dealing by mail).

{11} We conclude that these rules apply in New Mexico. One ordinary meaning of the word to pay is to discharge a debt or obligation. *See Websters Third New International Dictionary* (unabridged) 1659 (2002). Since 1933, it has been acknowledged that, "[t]he delivery of a check does not, ordinarily, per se, constitute payment in a legal sense." *Franciscan Hotel Co. v. Albuquerque Hotel Co.,* 37 N.M. 456, 471–72, 24 P.2d 718, 726 (1933). Furthermore, in *Hall v. Teal,* 77 N.M. 780, 784, 427 P.2d 662, 665 (1967), our Supreme Court stated, "The defense of payment must be based on an actual delivery by a debtor or someone for him to his creditor, of money or its equivalent with the intention to extinguish the debt." Since money is not delivered until the check is presented for payment and honored, merely placing a check in the mail does not itself constitute a payment in the ordinary sense of the word. Finally, we have examined *Ballard v. Miller,* 87 N.M. 86, 529 P.2d 752 (1975). This case involved a suit to cancel an oil and gas lease. The lease provided for annual renewals of the lease provided that payments were timely made. *Id.* at 87, 529 P.2d at 753. The lease provided: "The payment or tender of rental may be made by check, or draft of lessee, mailed or delivered to [named bank]." *Id.* at 87–88, 529 P.2d at 753–54. In 1970, a check was mailed and received by the designated bank prior to the October 22, 1970, deadline. The same procedure was followed the following year for the period commencing on October 22, 1971, but the check was lost in the mail. *Id.* at 88, 529 P.2d at 754. Upon learning that the check had been lost in the mail, the lessee tendered a cover letter and a substitute check to the bank which was refused by the lessor on the grounds that it was not timely. *Id.* The trial court's finding that there had been a timely tender of the check under the circumstances was affirmed by the Supreme Court. *Id.* at 93, 529 P.2d at 759.

■ {12} Perhaps anticipating our holding, Wife argues that because forfeitures are not favored, the district court correctly concluded that Wife's redemption was timely. We are not persuaded. To determine if a forfeiture has occurred pursuant to a contract, the first task is examine the language of the contract to identify the event which will result in a forfeiture. *Thomas v. City of Santa Fe,* 112 N.M. 456, 460, 816 P.2d 525, 529 (Ct.App.1991) (citing *Johnson v. City of Hackensack,* 200 N.J.Super. 185, 491 A.2d 14, 17 (Ct.App.Div.1985)). Because forfeitures are not favored, where contractual language describes a condition of forfeiture in language that is ambiguous, the contractual language is construed against forfeiture. Examples where ambiguous language has been construed against forfeiture are *U.S. Bank National Ass'n v. Martinez,* 2003–NMCA– 151, ¶ 7, 134 N.M. 665, 81 P.3d 608 (concluding that a statute providing for a redemption period of "not less than one month" means a calendar month running from the date of a

court order triggering the right of redemption to the corresponding date of the subsequent month partially because "forfeitures are not favored in the law"); *Thomas,* 112 N.M. at 461, 816 P.2d at 530 (construing a deed providing for reversion of the property if it was not used for "airport purposes" as not allowing for a reversion of a portion of the property because there was no such language in the deed); and *Davies v. Boyd,* 73 N.M. 85, 89–90, 385 P.2d 950, 952–53 (1963) (Moise, J., specially concurring) (stating that ambiguous language in a contract should be construed to avoid a forfeiture because forfeitures are not favored). In this case, however, the language of the Stipulated Judgment requiring Wife to pay Husband within thirty days is not ambiguous, and the evidence clearly establishes that Wife did not comply. Equity does not assist Wife in this case. *See Richardson v. Pacheco,* 35 N.M. 243, 245, 294 P. 328, 329 (1930) (denying equitable relief to extend the statutory period of redemption because, "[h]e who waits until the last day to seek out the purchaser takes the risk of missing him").

{13} We also note Wife's argument that a forfeiture may not be enforced when doing so will result in unfairness which shocks the conscience of the court. *See Eiferle v. Toppino,* 90 N.M. 469, 470, 565 P.2d 340, 341 (1977) ("[A]bsent unfairness which shocks the conscience of the court, the appellees are entitled to enforce the contract as written." (quoting *Bishop v. Beecher,* 67 N.M. 339, 343, 355 P.2d 277, 280 (1960))). Equitable considerations which have been considered in determining whether to relieve a forfeiture include the amount of money already paid; the period of possession of the property; the marked value of the property at the time of the default compared to the original sales price; and the rental potential and value of the property. *See Martinez v. Logsdon,* 104 N.M. 479, 482, 723 P.2d 248, 251 (1986) (noting these factors). However, since no evidence was introduced before the district court concerning these and similar factors, there is no basis for us to conclude, on this record, that unfairness, shocking the con-

science of the court results by enforcing the Stipulated Judgment.

{14} We recognize and enforce the strong public policy of favoring settlement agreements. *Builders Contract Interiors, Inc. v. Hi–Lo Indus., Inc.,* 2006–NMCA–053, ¶ 7, 139 N.M. 508, 134 P.3d 795 (citing *Navajo Tribe of Indians v. Hanosh Chevrolet–Buick, Inc.,* 106 N.M. 705, 707, 749 P.2d 90, 92 (1988) (discussing the policy of enforcing settlement agreements)). In negotiating a settlement contract, the parties "agree to be bound by its provisions and must accept the burdens of the contract along with the benefits." *Nearburg v. Yates Petroleum Corp.,* 1997–NMCA–069, ¶ 31, 123 N.M. 526, 943 P.2d 560. Our duty is to "enforce the terms of the contract which the parties made for themselves." *Id.* Because of their favored status, there must be a compelling basis to set aside a settlement agreement. *Builders Contract Interiors, Inc.,* ¶ 7. We will allow equity to interfere with enforcing clear contractual obligations "only when 'well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality' justify deviation from the parties' contract." *Id.* ¶ 8 (quoting *Nearburg,* 1997–NMCA–069, ¶ 31, 123 N.M. 526, 943 P.2d 560); *see Winrock Inn Co. v. Prudential Ins. Co. of Am.,* 1996–NMCA–113, ¶ 36, 122 N.M. 562, 928 P.2d 947 ("In the absence of fraud, unconscionability, or other grossly inequitable conduct, New Mexico courts do not have discretion … to interfere with contractual rights and remedies which go to the heart of the bargain."). There is no equitable basis not to enforce the Stipulated Judgment in this case.

{15} Wife and Husband freely negotiated and agreed to the terms in the Stipulated Judgment with the advice of independent counsel. They both agreed that should Wife fail to redeem the property by paying Husband within thirty days after Husband exercised his option, she would lose all right, title, and interest in the property, and the agreement did not allow Wife to pay Husband by depositing the check in the mail on the due date. The mailbox rule does not require a

different result, and we see nothing that justifies the use of equity to change the agreement. We hold that when Wife deposited the redemption check in the mail on the deadline, the attempted redemption was untimely.

{16} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and RODERICK T. KENNEDY, Judge.