2005-NMCA-033

109 P.3d 295

Nancy L. EDENS,
Petitioner/Appellee/Cross–Appellant,

v.

Walter A. EDENS, Jr., Respondent/Appellant/Cross–Appellee.

Nos. 24,342, 24,597.

Court of Appeals of New Mexico.

Jan. 13, 2005.

Certiorari Denied, No. 29,055,
March 2, 2005.

L. Helen Bennett, L. Helen Bennett, P.C., Albuquerque, NM for Appellee/Cross–Appellant.

Jenise Flowers, Denver, CO, for Appellant/Cross–Appellee.

## OPINION

FRY, Judge.

{1} This is a post-dissolution of marriage case in which Walter Edens (Husband) appeals the trial court's order denying his motion to set aside the alimony provisions of the marital settlement agreement (MSA) that was incorporated into a final decree of divorce. Husband also appeals the trial court's reconsideration of its initial denial of attorney fees and costs to Nancy Edens (Wife). Wife cross-appeals the trial court's initial refusal to award her attorney fees and costs. We affirm the trial court's decision refusing to set aside the lump sum alimony provision of the MSA incorporated into the divorce decree. We further hold that the trial court lost jurisdiction to reconsider its denial of an award for attorney fees and costs in this case because Husband had already filed a notice of appeal at the time Wife's motions to reconsider were filed in the trial court. As a result of this determination, we hold the trial court's order on Wife's motions for reconsideration is void. Because the trial court's initial order denying Wife's request for fees and costs was entered without the trial court first considering argument, and because the court did not make findings of fact and conclusions of law on the issue, we remand to the trial court to revisit the issue.

## BACKGROUND

{2} After approximately twenty-eight years of marriage, Wife filed a petition for dissolution of marriage and the parties filed the MSA. On the same day, the trial court approved and filed the final decree of dissolution of marriage, which incorporated the MSA.

{3} Although Husband and Wife proceeded pro se in the divorce proceedings, in the months leading up to entry of the final decree both Husband and Wife were advised by independent counsel. The parties conferred in January 2001 and resolved issues concerning, among other things, division of their community and separate property and liabilities. They then agreed to obtain the assistance of a mediator experienced in family law to resolve the issue of alimony.

{4} At the time of mediation, the parties acknowledged there was a disparity in their incomes. Husband historically earned an income considerably larger than Wife's income. Husband worked as a sales engineer for the last eleven years of the marriage. Wife worked approximately half-time as a physical therapist during the last ten years of the marriage. During the years immediately preceding the divorce, Husband was earning approximately $180,000–$240,000 per year, while Wife was earning less than $30,000 per year.

{5} At the first mediation session, the parties discussed the concept of mediation, signed a mediation contract, and exchanged general financial information. Husband informed Wife that he planned to leave his job and move to Colorado to build a home. He planned to seek work in Colorado in the fall of 2001. Wife informed Husband that she earned between $1200 and $1500 per month, but the parties did not discuss whether this was net or gross income. Wife also stated that she would be unable to work full-time due to a medical condition that Husband was aware of, but that she was looking to increase her work hours to thirty-two hours per week. During this session and the following two mediation sessions, Husband did not dispute Wife's neck and arm pain stemming from her medical condition, and he did not question her inability to work full-time. The mediator asked the parties to prepare budgets to be used at the next mediation session.

{6} During the second mediation session, Wife informed Husband that she thought she could increase her income to $2000 per month by working thirty-two hours per week. Again, there was no discussion of whether this was gross or net income. Wife in fact received a pay raise of $1.00 per hour that first appeared in her late March 2001 paycheck, but she apparently did not report this during mediation. Husband stated that he

expected to earn approximately $137,000–$165,000 per year when he began to work again in Colorado. If he did not meet his expectations, his fall-back position was to earn somewhere between $70,000 and $100,000 per year. The mediator discussed alimony but did not advise the parties how they should treat the issue. He explained that numerous factors are considered when a court makes an alimony determination and suggested that the parties seek legal advice concerning this issue. The mediator also suggested that Husband seek advice from an accountant. Husband proposed a lump sum alimony award during this session, but the parties did not agree on any specific terms. Wife proposed that Husband pay her $1500 per month in alimony; Husband did not respond to this offer at the second session.

{7} At the third and final mediation session, Wife reported that her employer agreed to increase her work hours gradually to thirty-two hours per week and that she would be earning $34,725 per year by August 2001. The parties focused on reaching an amount to be paid to Wife as alimony. Husband had consulted with an accountant and his attorney about the issue of alimony. Ultimately, at Husband's suggestion, the parties agreed to a nonmodifiable lump sum alimony amount to be paid at $2000 per month for the first six months after divorce and then $1500 per month thereafter until Wife turned sixty-two.

{8} Based on the agreement reached between Husband and Wife during mediation, the mediator drafted the MSA and final decree of divorce. The documents went through three drafts, and the parties reviewed, revised, and executed them during the approximately three months after the final mediation session. The MSA contained not only the alimony provisions, which set forth the terms of a nonmodifiable lump sum alimony payment, but also the property settlement and liability issues that the parties had agreed to prior to mediation. The trial court incorporated the MSA into the final decree of divorce as a final judgment.

{9} One year after the stipulated final divorce decree documents were filed in the trial court, Husband filed a motion to set aside the final judgment and alimony provisions of the MSA pursuant to Rule 1–060(B) NMRA. Husband argued that the provisions of the MSA concerning alimony should be set aside "on the grounds of misrepresentation, mistake, that it is no longer equitable that the judgment should have prospective application and/or because the contract provisions for alimony as written are so inequitable that it is unconscionable to enforce the decree incorporating the [MSA]." Husband maintained that Wife misrepresented her potential income, earning capacity, budget, and medical condition during mediation, and that the alimony provisions of the MSA should be set aside because the lump sum alimony agreement was based on Wife's misrepresentations. Husband further argued that the MSA was ambiguous and inequitable and should be set aside based on those grounds.

{10} When Husband filed his motion, the financial circumstances of the parties had changed to some extent. At the time of the mediation sessions and before the entry of the final decree, Husband projected that he would be earning between $70,000 and $165,000 per year. But after the divorce and his move to Colorado, he had actually earned between $56,000 and $64,000 annually. Since the divorce, Wife had earned between $33,000 and $42,000 per year.

{11} After a trial on the merits during July 2003, the trial court filed its findings of fact and conclusions of law denying Husband's motion to set aside the alimony provisions of the MSA incorporated into the final divorce decree. In that same order, without hearing argument on the issue, the trial court also denied Wife's request for an award of attorney fees and costs incurred in defending against Husband's motion; it ordered each party to bear his or her own fees and costs.

{12} Husband filed a notice of appeal on September 10, 2003, from the trial court's order denying his motion to set aside the MSA alimony provision in the final judgment. On September 11, 2003, Wife filed a motion to reconsider the denial of attorney fees and a motion to reconsider the denial of her application for costs. Husband moved to strike the motions to reconsider for lack of jurisdiction because his notice of appeal was

filed prior to Wife's motions. On September 19, 2003, Wife filed a notice of cross-appeal pertaining to the initial denial of the attorney fees and costs. After a hearing and briefing on Husband's motion to strike, the trial court entered an order reserving its right to rule on the motions for reconsideration of attorney fees and costs if the court found it had jurisdiction. The trial court then filed a memorandum order granting Wife's motions for reconsideration and awarding Wife a portion of the fees and costs she requested. Husband filed a second notice of appeal from that order, and we consolidated that appeal with his earlier appeal on the issue of setting aside the alimony provisions of the MSA.

## DISCUSSION

### The Trial Court Correctly Denied Husband's Motion Under Rule 1–060(B)

{13} We generally review the trial court's ruling under Rule 1–060(B) for an abuse of discretion "except in those instances where the issue is one of pure law." *Martinez v. Friede,* 2004–NMSC–006, ¶ 19, 135 N.M. 171, 86 P.3d 596. Here the trial court was concerned with factual issues, such as whether Wife had misrepresented facts during the mediation, so we will review for abuse of discretion the trial court's decision refusing to set aside the MSA. To reverse the trial court under an abuse-of-discretion standard, "it must be shown that the court's ruling exceeds the bounds of all reason . . . or that the judicial action taken is arbitrary, fanciful, or unreasonable." *Meiboom v. Watson,* 2000–NMSC–004, ¶ 29, 128 N.M. 536, 994 P.2d 1154 (internal quotation marks and citation omitted) (omission in original); *see also Talley v. Talley,* 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct.App.1993) ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion."). "Where the court's discretion is fact-based, we must look at the facts relied on by the trial court as a basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence." *Apodaca v. AAA Gas Co.,* 2003–NMCA–085, ¶ 60, 134 N.M. 77, 73 P.3d 215 (internal quotation marks and citation omitted).

{14} Husband moved to set aside the final judgment and the alimony provisions of the MSA under Rule 1–060(B)(1), (3), (5), and (6). Under the provisions of Rule 1–060(B) upon which Husband relies, a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

. . . .

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

. . . .

(5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

Rule 1–060(B).

{15} Before analyzing Husband's arguments under Rule 1–060(B), we first review the pertinent provisions of the MSA. The MSA provided that "Husband shall pay support and maintenance to Wife . . . [t]he sum of Two Hundred Twenty Thousand Five Hundred and No/100 Dollars ($220,500.00) to be paid to [Wife] until paid in full or until [Wife's] death, whichever occurs first." The MSA further stated that Husband shall pay Wife $2000 per month for the first six months and then pay $1500 per month until the obligation is paid in full or until Wife's death. The alimony provision provided that "[p]ayments stop should [Wife] die before July 2013, but are otherwise *nonmodifiable* by the parties and the Court." (Emphasis added.) In addition, the alimony provision stated that "[t]he alimony as set forth constitutes deductible, lump sum alimony paid in installments pursuant to Sections 40–4–7(B)(1)(d) and 40–4–7(B)(2)(b) NMSA 1995."

*Rule 1–060(A)*

{16} Husband argues that the MSA was ambiguous and should have been set aside under Rule 1–060(A), which permits a

court to correct clerical mistakes in judgments, or under Rule 1–060(B)(1). This argument has no merit. *See generally Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (discussing how a court determines whether an agreement is ambiguous). The MSA is clear that the lump sum alimony is nonmodifiable. Husband suggested an agreement for nonmodifiable lump sum alimony, and Husband understood that Wife could not move to modify the nonmodifiable amount of alimony. This was entirely consistent with Husband's desire that Wife not be able to seek more alimony if Husband's income increased. The MSA itself and the intentions of the parties support the trial court's conclusion that the alimony provision of the MSA is not ambiguous.

*Rule 1–060(B)(3)*

{17} Relief under Rule 1–060(B)(3) is available where the trial court determines that misconduct of the opposing party substantially impeded the movant's full and fair preparation of its case. *Rios v. Danuser Machine Co.,* 110 N.M. 87, 93, 792 P.2d 419, 425 (Ct.App.1990). There was substantial evidence presented to the trial court to support its conclusion that Husband was not impeded in the preparation and presentation of his case.

{18} It is undisputed that Husband had no job at the time the MSA was executed and that the alimony award was based on his previous salary and his hope of projected similar future earnings, and on Wife's predicted income. Husband attested that during mediation between January and June 2001, when the MSA was finally signed, he did not know Wife's hourly wage or work hours. Husband contends that he relied on Wife's misrepresentations made during mediation that she earned between $1200 and $1500 per month and that she could not support herself on this income. Husband further claims that his attorney advised him to make a lump sum award based on Wife's medical condition, which he claims he later learned was exaggerated, and her inaccurate statements about her income.

{19} The evidence reveals that Wife projected she could make approximately $2000 per month working thirty-two hours per week. Then, at the third and final mediation session, Wife reported a projected yearly income of at least $34,725 beginning August 2001. Husband denies being present to hear Wife state this estimated figure, but the mediator testified that Husband was present when Wife made the statement.

{20} The evidence supports the determination that Husband did not rely on Wife's representations regarding her earning capacity or her medical condition when he agreed on the lump sum alimony provision, and that Wife's income and budget were not substantial considerations for him. Husband's counsel testified that Husband arrived at a lump sum, nonmodifiable calculation based on his own concept of reasonableness, and that he did not make a mistake in relying on Wife's representations about her income or budget. Husband wanted to make sure Wife was comfortable, and he wanted to protect his future earnings from a motion for an upward modification by Wife if he made substantially more money in the future or if she declined in health. There was also testimony that Husband wanted to avoid litigation fees and that he sought to reach an agreement quickly because he planned to move to Colorado in order to get on with his life. Husband obtained the advice of both an attorney and an accountant, and he knew that budget and income were only some of the factors a court considers when it determines a lump sum award. Yet he proposed to pay Wife nonmodifiable lump sum alimony anyway because he thought it would best serve his needs and protect his future earnings.

{21} Therefore, while Husband contends that Wife misrepresented her earning potential, the evidence establishes that each party trusted the other to predict future earning potential. As it turned out, Wife may have underestimated her future income, while Husband overestimated his. These inaccurate predictions do not amount to fraud or misrepresentation. There was no showing that Wife knowingly misrepresented what her income would be. While Husband contends that he thought the parties were discussing gross income, Husband has not shown that Wife made representations dur-

ing mediation about whether her income was gross or net income. While she did not report her $1.00 per hour raise, this failure on Wife's part was harmless considering that she did report during the final mediation session that she expected to earn at least $34,725 per year. With respect to Wife's medical condition, testimony established that Husband chose not to delve into Wife's medical records or question Wife's medical condition even though these records were available for his inspection.

{22} In short, the record indicates that Husband made a free and conscious choice when he suggested lump sum alimony. Husband and Wife were entitled to enter into a voluntary settlement agreement. "If equitable, a stipulated agreement should not be vacated merely because an award may have been unwise or unfortunate in light of subsequent events." *Harkins v. Harkins*, 101 N.M. 296, 297, 681 P.2d 722, 723 (1984). "Rule 60(b) is not to be invoked to give relief to a party who has chosen a course of action which in retrospect appears unfortunate." *Benavidez v. Benavidez*, 99 N.M. 535, 539, 660 P.2d 1017, 1021 (1983) (internal quotation marks and citation omitted). Further, "Rule 60(b) cannot be used to relieve a party from the duty to take legal steps to protect his interests." *Id.* Husband took a calculated risk that turned out badly for him, but this fact provides no basis for relief under Rule 1–060(B)(3).

### Rule 1–060(B)(5)

{23} Husband argues that the alimony provision should be set aside under Rule 1–060(B)(5) because, in light of the parties' changed circumstances, it is no longer equitable that the provision be given prospective application. This argument is without merit. Husband's voluntary unemployment and life choices that have changed his ability to pay the alimony do not justify a modification in support. *See generally Henderson v. Lekvold*, 95 N.M. 288, 292, 621 P.2d 505, 509 (1980) (holding that in a child support case where a parent's "salary has increased and the increased burden on his finances is the result of an obligation he incurred voluntarily, it was an abuse of dis-

cretion for the trial court to reduce his child support obligations to such an extent" (emphasis omitted)); *Barnes v. Shoemaker*, 117 N.M. 59, 67, 868 P.2d 1284, 1292 (Ct.App. 1993) (concluding that "when a judgment is founded on a prediction that takes into account various contingencies, equity does not require modification of the judgment simply because events did not evolve in accordance with the prediction"); *Wolcott v. Wolcott*, 105 N.M. 608, 609–10, 735 P.2d 326, 327–28 (Ct. App.1987) (holding that the trial court did not abuse its discretion when it decided to continue the wife's alimony after the husband's voluntary change of employment). The law favors finality and "[t]he public policy of this state discourages repeated attempts to reopen support decrees." *Cherpelis v. Cherpelis*, 1996–NMCA–037, ¶ 20, 121 N.M. 500, 914 P.2d 637. Husband's miscalculation of his future income is not a basis to set aside the alimony provision under Rule 1–060(B)(5). *See Benavidez*, 99 N.M. at 539, 660 P.2d at 1021.

### Rule 1–060(B)(6)

{24} Husband argues that the trial court should have set aside the alimony provisions of the divorce decree under Rule 1–060(B)(6) because the provision was unconscionable and violated the Thirteenth Amendment's prohibition against involuntary servitude. We are not persuaded. The evidence in this case does not establish the existence of exceptional circumstances contemplated by the rule. "Rule 1–060(B)(6) is designed to apply only to exceptional circumstances, which, in the sound discretion of the trial judge, require an exercise of a reservoir of equitable power to assure that justice is done." *Stein v. Alpine Sports, Inc.*, 1998–NMSC–040, ¶ 17, 126 N.M. 258, 968 P.2d 769 (internal quotation marks and citations omitted); *see also Wehrle v. Robison*, 92 N.M. 485, 487, 590 P.2d 633, 635 (1979) (stating that "[a]n individual must establish the existence of exceptional circumstances to obtain relief under Rule 60(b)(6)" and that one "cannot claim relief under Rule 60(b)(1) and (3) and also claim relief under subsection (6)").

{25} First, the MSA was not unconscionable. Husband and Wife mutually

agreed on the terms of the MSA, and it was Husband who suggested the nonmodifiable lump sum alimony provision after consultation with an attorney and an accountant. Second, enforcement of the voluntary MSA does not amount to involuntary servitude that violates the Thirteenth Amendment to the United States Constitution. Husband freely entered into the terms of the MSA, and he has not been made a "slave" to Wife. "Alimony . . . is support for one spouse by another as a substitute for the statutory right to marital support during coverture." *Brister v. Brister,* 92 N.M. 711, 715, 594 P.2d 1167, 1171 (1979). Alimony "is not intended as a penalty against a husband." *Id.*

### The Trial Court Properly Denied Husband's Motion for Summary Judgment

{26} Husband contends the trial court should have granted his motion for summary judgment, which argued that (1) the trial court should exercise its inherent or continuing jurisdiction to modify or terminate the MSA's alimony provision pursuant to Section 40–4–7(F), and (2) the MSA's provision for nonmodifiable alimony was unenforceable pursuant to NMSA 1978, § 40–2–8 (1907). We do not agree.

{27} At issue is the interpretation of statutes, which is a question of law subject to de novo review. *Cooper v. Chevron U.S.A., Inc.,* 2002–NMSC–020, ¶ 16, 132 N.M. 382, 49 P.3d 61. Looking first at Section 40–4–7(F), we conclude the statute does not apply to the type of nonmodifiable lump sum alimony agreement in this case. It applies to periodic payments. Section 40–4–7(B)(2)(a) plainly limits the support awards subject to modification. It states that a trial court may "modify and change any order in respect to spousal support awarded pursuant to the provisions of Subparagraph (a), (b) or (c) of Paragraph (1) of this subsection whenever the circumstances render such change proper[.]" § 40–4–7(B)(2)(a). The referenced sections permit awards of rehabilitative spousal support, § 40–4–7(B)(1)(a), transitional support, § 40–4–7(B)(1)(b), and support for an indefinite duration, § 40–4–7(B)(1)(c). But the statute's provision permitting modification does not apply to lump

sum awards under § 40–4–7(B)(1)(d) ("a single sum to be paid in one or more installments that specifies definite amounts, subject only to the death of the receiving spouse") and § 40–4–7(B)(1)(e) ("a single sum to be paid in one or more installments that specifies definite amounts, not subject to any contingencies, including the death of the receiving spouse"). Thus, when Section 40–4–7(F) refers to a court's continuing jurisdiction "over proceedings involving periodic spousal support payments" it is referencing the support payment provisions in Sections 40–4–7(B)(1)(a), (b), and (c).

{28} Turning next to Section 40–2–8, Husband subjects the statute to a strained reading. That statute provides:

A husband and wife cannot by any contract with each other alter their legal relations, except of their property, and except that they may agree in writing, to an immediate separation, and may make provisions for the support of either of them and of their children *during their separation.*

§ 40–2–8 (emphasis added). Focusing on the emphasized language, Husband reads this to mean that spouses are prohibited from entering into agreements providing for post-divorce support. This interpretation is unreasonable. Section 40–2–8 governs how spouses may alter by contract their legal relationship during marriage; here, by contrast, the parties entered into an agreement applicable to their relationship after dissolution of their marriage. Section 40–2–8 has nothing to do with the MSA.

### The Trial Court Properly Denied Husband's Motion for Protective Order

{29} Husband contends the trial court erred in granting a protective order denying him the right to discover and/or establish Wife's infidelity. He maintains Wife's infidelity was relevant to whether it was equitable to terminate or modify the alimony judgment and whether Wife was a credible witness. Again, this argument has no merit. A trial court has discretion to limit discovery. *See Hartman v. Texaco Inc.,* 1997–NMCA–032, ¶ 20, 123 N.M. 220, 937 P.2d 979. The trial court did not abuse its discretion in this case. Proof of Wife's al-

leged extramarital affair was immaterial and irrelevant to the trial court's consideration of Husband's motion to set aside the alimony provision of the MSA. The trial court was not determining the amount of alimony; that had already been decided and agreed upon by the parties in the MSA. The trial court was considering whether the MSA should be set aside under Rule 1–060(B), and the allegations of an affair were irrelevant to that determination.

### The Trial Court Did Not Have Jurisdiction to Grant Wife's Motions for Reconsideration of Attorney Fees and Costs

{30} Husband maintains that the trial court's November 13, 2003, order awarding attorney fees and costs to Wife is void and must be vacated because the trial court lost jurisdiction to hear Wife's motions for reconsideration on attorney fees and costs once Husband filed a notice of appeal in this Court. We agree.

{31} The day after Husband filed his notice of appeal from the trial court's denial of his Rule 1–060(B) motion, Wife filed motions asking the court to reconsider its previous denial of Wife's motions for attorney fees and costs. Approximately two months later, the trial court filed an order granting Wife's motions for reconsideration, finding that under *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 824 P.2d 1033 (1992), the court "retains jurisdiction to address the issues of fees and costs (collateral matters) even after the notice of appeal is filed." The trial court found that it had erred when it denied Wife's fees and costs without any findings and conclusions to justify its ruling. Therefore, the court decided it must reconsider its ruling and awarded Wife a portion of the fees and costs she requested.

{32} A pending appeal divests a trial court of jurisdiction to take further action that would affect the judgment on appeal. *Kelly Inn,* 113 N.M. at 241, 824 P.2d at 1043; *see Luboyeski v. Hill,* 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) (holding that notice of appeal divested trial court of jurisdiction to grant pending motion to amend complaint). This case does not fall within the *Kelly Inn* exception to this rule, where a trial court retains jurisdiction to consider unresolved matters collateral to the underlying controversy. Here, the decision appealed from fully disposed of the Rule 1–060(B) motion and the issue of attorney fees and costs. In addition, the trial court's decision contains decretal language consistent with a final, appealable order. *See Khalsa v. Levinson,* 1998–NMCA–110, ¶ 17, 125 N.M. 680, 964 P.2d 844 ("In a dissolution proceeding, there is no final order unless and until an order is entered that contains decretal language and resolves all the matters raised in the initial petition."). The trial court specifically denied attorney fees and costs when it ordered that each party bear his or her own fees and costs. There was no issue left open on this matter to decide. Because the trial court lost jurisdiction over this case when Husband filed his initial notice of appeal, its subsequent order granting Wife's motions for reconsideration and awarding attorney fees and costs to Wife is void.

### Wife's Cross–Appeal Concerning Attorney Fees and Costs

{33} Because we conclude the trial court's order awarding Wife attorney fees and costs is void, we now consider Wife's cross-appeal challenging the trial court's initial order of August 28, 2003, refusing to award her attorney fees and costs. Wife argues she was entitled to an award of attorney fees and costs, and she notes that the trial court denied the requested award without a hearing and without entering findings of fact and conclusions of law on the issue. We agree that the trial court abused its discretion by ruling on Wife's motion for fees and costs without considering the argument of counsel on the issue and without entering findings and conclusions. *See Monsanto v. Monsanto,* 119 N.M. 678, 680–82, 894 P.2d 1034, 1036–38 (Ct.App.1995) (explaining that a grant or denial of an award of attorney fees in a domestic relations case must be supported by substantial evidence and the trial court is required to enter findings of fact and conclusions of law on the issue). The trial court must assess a number of considerations, including the parties' economic disparity. *Id.; see also Gomez v. Gomez,* 119

N.M. 755, 759, 895 P.2d 277, 281 (Ct.App. 1995) (listing factors to be considered in determining whether to award attorney fees). Therefore, the initial denial of fees and costs is reversed, and the matter is remanded to the trial court to make findings in support of its decision on Wife's request for an award of fees and costs for Wife.

## CONCLUSION

{34} For the foregoing reasons, we affirm the trial court's order refusing to set aside the alimony provision of the parties' MSA incorporated into the final decree of divorce. We reverse the trial court's November 13, 2003, order awarding attorney fees and costs to Wife as void for lack of jurisdiction. Finally, we reverse the trial court's initial decision to deny attorney fees and costs and remand for entry of findings and conclusions on that issue.

{35} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.