**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-026

Filing Date:    February 2, 2009

Docket No. 27,784

MARK CORRADO GALASSI,

    Petitioner-Appellee,

v.

ROSALIA GIULIA GALASSI,

    Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

Jerome M. Ginsburg
Santa Fe, NM

for Appellee

Mary Jo Snyder
Santa Fe, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**    Applying the presumption that "[t]he remarriage of a spouse terminates spousal support," the district court stopped Rosalia Giulia Galassi's (Wife) spousal support because she had remarried and because she did not demonstrate exceptional circumstances justifying continued support.  We reverse and hold that spousal support designated as nonmodifiable under NMSA 1978, Section 40-4-7(B)(2)(b) (1997) is not subject to the presumption of termination upon the remarriage of the receiving spouse.

**FACTS AND PROCEDURES**

1

**{2}**     Wife and Mark Corrado Galassi (Husband) were married in 1986. The marriage produced one child. In January 2004 the parties filed a marital settlement agreement (MSA). Both parties were represented by counsel. The MSA was ratified by the district court in its final decree of dissolution of marriage and was made "an integral, inseparable part of [the] Decree."

**{3}**     The MSA included the following provisions for spousal support:

> In addition to the lump sum alimony distribution set forth in Section III, Paragraph 3 at page 5, [Husband] shall pay spousal support in the amount of $2,100 per month for twelve (12) months beginning January 20, 2004. Beginning January 20, 2005, [Husband] shall pay spousal support in the amount of $2,000 per month for twelve months. Beginning January 20, 2006, [Husband] shall pay spousal support in the amount of $1,900 per month for twelve months. Beginning January 20, 2007 through December 20, 2008, [Husband] shall pay spousal support in the amount of $1,500 per month. The spousal support shall be non-modifiable for five (5) years, after which it shall terminate.

There was no mention made in the MSA or in the final decree as to the effect, if any, of Wife's remarriage. The parties apparently did not discuss the potential effect of remarriage during the negotiations leading up to the final form of the MSA.

**{4}**     Wife remarried in October 2005, and in November, Husband moved to terminate spousal support. In August 2006 the district court heard arguments on the motion. Interestingly, the parties provided no testimony; the hearing was limited to counsel's arguments. Following the August hearing, the district court entered an interim order which included the following conclusions:

> 3.     The common law rule and New Mexico case law is that spousal support may terminate upon the remarriage of the recipient spouse. The recipient spouse may show extraordinary circumstances as to why it should not terminate.

> 4.     The designation of the spousal support as nonmodifiable as to amount and duration without reference to remarriage is insufficient to waive the common law rule concerning the termination of spousal support upon remarriage.

**{5}**     The district court later held an evidentiary hearing "to determine whether extraordinary circumstances exist for spousal support to continue." Following that hearing, the district court entered its final findings of fact and conclusions of law and judgment. The district court found that Wife's financial circumstances had improved since the parties' divorce, and thus there were no exceptional circumstances necessitating continuation of

2

spousal support. The district court concluded that the MSA provided for "transitional alimony" allowed under Section 40-4-7(B)(1)(b). While noting that "transitional alimony can be designated as non-modifiable as to term and/or amount," and in accord with its interim order, the district court also concluded as a matter of law that:

> B.      The remarriage of a spouse terminates spousal support if the recipient spouse fails to prove that there are exceptional circumstances justifying continued spousal support.

> C.      Termination and modification are distinct terms with distinct meanings under the law.

## ANALYSIS

**{6}**      Husband accurately notes that in *Kuert v. Kuert*, 60 N.M. 432, 292 P.2d 115 (1956), our Supreme Court held that remarriage creates a prima facie case that alimony should stop unless the recipient shows exceptional conditions calling for continued support. *Id.* at 439-40, 292 P.2d at 120. Husband argued below, and argues here, this presumption still applies. Wife argues that the rule in *Kuert* has been displaced by the 1993 and 1997 amendments to the statutes governing spousal support, specifically Sections 40-4-7(B)(1) and (B)(2). The district court agreed with Husband. We conclude that Wife's position is closer to the mark.

**{7}**      When *Kuert* was decided in 1956, the statutory provision relating to alimony provided:

> on final hearing, [the court] may allow the wife such a reasonable portion of the husband's separate property, or such a reasonable sum of money to be paid by the husband, either in a single sum, or in instalments [sic], as alimony, as under the circumstances of the case may seem just and proper; and may modify and change any order in respect to alimony allowed the wife, whenever circumstances render such change proper[.]

NMSA 1953, § 22-7-6 (Vol. 5, 1943). This provision, for the most part, remained unchanged from 1941 to 1973 when it was amended to divide the material into subsections and to incorporate certain phraseology, punctuation, and style changes. 1973 N.M. Laws, ch. 319, § 7. The substance of the provision did not change except to allow awards of alimony to either spouse. NMSA 1953, § 22-7-6(B)(1) to (3) (Vol. 5, 1975 Pocket Supp.).

**{8}**      In 1993 the Legislature rewrote Subsections (B)(1) and (B)(2) of the statute. 1993 N.M. Laws, ch. 144, § 1. The new statute now provides:

> B.      On final hearing, the court:

3

(1) may allow either party such a reasonable portion of the spouse's property or such a reasonable sum of money to be paid by either spouse either in a single sum or in installments, as spousal support as under the circumstances of the case may seem just and proper, including a court award of:

(a) rehabilitative spousal support that provides the receiving spouse with education, training, work experience or other forms of rehabilitation that increases the receiving spouse's ability to earn income and become self-supporting. The court may include a specific rehabilitation plan with its award of rehabilitative spousal support and may condition continuation of the support upon compliance with that plan;

(b) transitional spousal support to supplement the income of the receiving spouse for a limited period of time; provided that the period shall be clearly stated in the court's final order;

(c) spousal support for an indefinite duration;

(d) a single sum to be paid in one or more installments that specifies definite amounts, subject only to the death of the receiving spouse; or

(e) a single sum to be paid in one or more installments that specifies definite amounts, not subject to any contingencies, including the death of the receiving spouse;

(2) may:

(a) modify and change any order in respect to spousal support awarded pursuant to the provisions of Subparagraph (a), (b) or (c) of Paragraph (1) of this subsection whenever the circumstances render such change proper; or

(b) designate spousal support awarded pursuant to the provisions of Subparagraph (a) or (b) of Paragraph (1) of this subsection as nonmodifiable with respect to the amount or duration of the support payments[.]

Section 40-4-7(B).

{9}   Apart from changing nomenclature ("spousal support" for "alimony") Subsection (B)(1) remained essentially unchanged. The addition of Subsections (a) through (e), however, worked a dramatic change in the statute. Whether these changes had an effect on the rule represented by *Kuert* is a question of law which we review de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

{10}   The new provisions describe five categories or types of spousal support that a district court may order. Section 40-4-7(B)(1). Of the five, only Subsection (B)(1)(c) allowing "support for an indefinite duration" can be analogized to the support allowed under earlier versions of the statute. The other four are entirely new. The rehabilitative support allowed

under Subsection (a) on its face is designed to aid in increasing the receiving spouse's ability to "earn income and become self-supporting" and may be conditioned on compliance with a rehabilitation plan. Transitional support under Subsection (b) allows an award designed to supplement the receiving spouse's income for a stated period. The transitional support provision does not include any condition on receipt of support other than a definite term. Subsections (d) and (e) allow an award of a single sum payable in one or more installments. Under Subsection (d) single sum support stops "only" upon the death of the receiving spouse. Under Subsection (e), even the death of the receiving spouse does not end the obligation to pay the single sum agreed to.

{11}    In addition to creating four new categories of spousal support, the Legislature revised the statute with regard to modifications of spousal support. The prior statute generally allowed the district court to "modify and change any order in respect to alimony allowed either spouse, whenever circumstances render such change proper[.]" Section 22-7-6(B)(2) (1975 Pocket Supp.). The new statute includes a similar modification provision covering rehabilitative, transitional, and indefinite spousal support. Section 40-4-7(B)(2)(a). However, and most pertinent to this case, the new provision also allows the district court to designate an award of rehabilitative or transitional support "as nonmodifiable with respect to the amount or duration of the support payments[.]" Section 40-4-7(B)(2)(b).

{12}    The district court determined that the spousal support agreed to by the parties in the MSA constituted "transitional alimony." The MSA provides that the spousal support shall be "non-modifiable for five (5) years, after which it shall terminate." The narrow question for us is whether the new statutory authority to declare transitional spousal support nonmodifiable overrides the presumption represented by *Kuert*. We hold that it does.

{13}    "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). The 1993 amendments we detail above were not mere adjustments at the margins of New Mexico spousal support law and practice. The Legislature substantially reworked the field. It created—or recognized and allowed—three new types of support: rehabilitative, transitional, and two types of single sum support payable in installments. Section 40-4-7(B)(1)(a), (b), (d), (e). And as to the three new types of support, the Legislature recognized and provided mechanisms that the district courts can use at the time the support is ordered to help assure the stability and continuity of the award.

{14}    Under the superceded statute, and under *Kuert*, spousal support was presumptively subject to revision and modification at any time as circumstances warranted. Section 40-4-7(B)(2)(a) allows that approach to continue. In contrast under the new statute, the district court can opt to limit the parties and its own future discretion at inception by declaring rehabilitative and transitional support "nonmodifiable." Section 40-4-7(B)(2)(b). Limiting at the outset the circumstances under which awards of spousal support may be changed is new in the statute.

**{15}** Courts normally assume that the Legislature is informed as to existing statutory and common law when it acts. *See generally Benavidez v. Sierra Blanca Motors*, 1996-NMSC-045, 122 N.M. 209, 213, 922 P.2d 1205, 1209 (holding that amendment to the Workers' Compensation Act effectively overruled prior case law concerning the eligibility of state prisoners for workers' compensation benefits); *Bettini v. City of Las Cruces*, 82 N.M. 633, 635, 485 P.2d 967, 969 (1971) (holding that Legislature did not allow municipalities to withhold utility service to subsequent owners of property thereby abrogating a prior Supreme Court opinion). In addition, courts assume that when the Legislature enacts a new statute "it intended to establish new law or to change law as it previously existed." *Leyba v. Renger*, 114 N.M. 686, 688, 845 P.2d 780, 782 (1992) (holding that enactment of the Review Organization Immunity Act abrogated the absolute immunity accorded peer review proceedings in prior case law). Paraphrasing our Supreme Court in *Leyba*, the Legislature must have intended its provision for nonmodifiability of transitional spousal support to mean something. *Id.*

**{16}** Taking into account the innovations introduced by the 1993 amendments including the power of the district court to choose to retain or to restrain its power to modify and change spousal support orders, we conclude that the approach represented by *Kuert* must yield to an order entered pursuant to Section 40-4-7(B)(2)(b).

**{17}** Our opinion in *Edens v. Edens*, 2005-NMCA-033, 137 N.M. 207, 109 P.3d 295, provides a readily adaptable model for how courts should analyze a request for a change in nonmodifiable spousal support. In *Edens* the husband moved to set aside the explicitly nonmodifiable spousal support provisions of his divorce judgment pursuant to the provisions of Rule 1-060 (B)(1), (3), (5), and (6) NMRA. *Edens*, 2005-NMCA-033, ¶ 14. Consistent with Rule 1-060(B) practice, the court in *Edens* placed the burden of persuasion on the party seeking a change, emphasizing: (1) the provision of the parties' MSA unambiguously declaring support to be "nonmodifiable . . . pursuant to Sections 40-4-7(B)(1)(d) and 40-4-7(B)(2)(b) NMSA 1995." (Emphasis omitted). *Edens*, 2005-NMCA-033, ¶¶ 15, 16; (2) husband's "free and conscious choice" to agree to nonmodifiable support. *Id.* ¶ 22; (3) the importance of enforcing stipulated agreements in the face of perhaps "unwise or unfortunate" later developments. *Id.*; (4) that MSAs providing for nonmodifiable lump sum support are not unconscionable. *Id.* ¶ 25; and (5) the importance of the finality judgments. *Id.* ¶ 23. In short, a request to change nonmodifiable support should follow Rule 1-060(B) practice with emphasis on the enforcibility of MSAs entered into pursuant to Section 40-4-7(B).

**{18}** We are aware that *Edens* involved a lump or single sum award under Section 40-4-7(B)(1)(d), but the marriage settlement agreement in *Edens* also referred to Section 40-4-7(B)(2)(b). *Edens*, 2005-NMCA-033, ¶ 15. In addition, as is the case here and the normal practice in these cases, the parties' settlement agreement was incorporated into the decree of divorce as a final judgment. *Id.* ¶ 8. In any event, we perceive no reason arising from the structure or language of the statute or any reason based on any policy consideration that would drive us to treat Section 40-4-7(B)(2)(b) nonmodifiable support differently from

6

Section 40-4-7(B)(1)(d) or (e) nonmodifiable single sum support.

**{19}** We are also aware that *Edens* appears to indicate that support ordered under Section 40-4-7(B)(1)(a), (b), and (c) may be subject to modification under Section 40-4-7(F). *Edens*, 2005-NMCA-033, ¶ 27. This observation was dicta in the context of *Edens*, and we are not bound by it. *Edens* simply did not address—because the issue was not before the court—the effect that designating support to be nonmodifiable under Section 40-4-7(B)(2)(b) would have on its comment. In addition, Section 40-4-7(F) would not apply to this case because we are not dealing with a marriage that lasted twenty years or more.

**{20}** Husband draws a distinction between modification and termination of support, essentially arguing that if the statute was intended to affect the common law approach of *Kuert*, it would have said so more directly. We disagree with this latter argument based on our analysis above. The same argument could be directed at single sum support awarded under Sections 40-4-7(B)(1)(d) or (e). They too do not mention remarriage and yet it would be impossible to hold that they do not abrogate *Kuert* without bending their language beyond recognition.

**{21}** The out-of-state authority Husband relies on to support his position is distinguishable. Some cases primarily deal with statutes that themselves draw a distinction between modification and termination. *See In re Marriage of Glasser*, 226 Cal. Rptr. 229, 231 (Ct. App. 1986) (holding that modification and termination for remarriage are controlled by different statutory provisions and a provision in a marital settlement agreement that does not specifically refer to the termination section is not sufficient to overcome the specific statutory mandate that remarriage terminates support). New Mexico's statutes simply are not drafted the same way.

**{22}** Other authority Husband cites actually support Wife's position. For example, in *Diefenbach v. Holmberg*, 26 P.3d 1186, 1187 (Ariz. Ct. App. 2001), the court ruled that a spousal support order which was "non-modifiable in amount or duration for any reason by either party" did not survive the death of the receiving spouse. (Internal quotation marks omitted.) Husband cites *Diefenbach* as a case that draws a distinction between modification and termination. The outcome in *Diefenbach* was compelled by a specific statutory provision not at issue here. Perhaps more important, in a later case the Arizona Supreme Court made clear that the concept of modification could and does include termination under another section of Arizona's statutes dealing with spousal support. *In re Marriage of Waldren*, 171 P.3d 1214, 1217 (Ariz. 2007) (en banc). The Arizona statutory provision at issue in *Waldren*, —Ariz. Rev. Stat. Ann. § 25-317(G) (2001)—is similar to, though not identical with, New Mexico's Section 40-4-7(B)(2)(b).

**{23}** Finally, Husband asserts that Wife's failure to include a provision concerning remarriage in the MSA results in the continuing application of *Kuert* to the MSA and the final decree that incorporated it. Husband's argument ignores the statute's effect on the meaning of terms used in MSA's. The statute sets a standard of meaning for MSAs using

7

statutory terminology or relying on statutory provisions such as Section 40-4-7(B)(2)(b). Parties are free to contract around the statutory standard, but the burden of suggesting limitations on such things as the concept of nonmodifiability should fall on the party who desires the limitation. In this case, it would be Husband. Husband admits he and his attorney thought about the issue of remarriage and that they decided not to broach it during negotiations. The statutory standard of nonmodifiability thus controls.

**CONCLUSION**

**{24}** The district court order terminating transitional spousal support is reversed. The matter is remanded for further proceedings consistent with this opinion.

**{25}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

Topic Index for _Galassi v. Galassi,_ No. 27,784

| | |
|---|---|
| **DR** | **Domestic Relations** |
| DR-MS | Marital Settlement Agreement |
| DR-SS | Spousal Support |
| | |
| **ST** | **Statutes** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |