**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-106**

**Filing Date: September 8, 2011**

**Docket No. 29,198**

**WELLS FARGO BANK, N.A. as Indenture
Trustee; DELAWARE TRUST COMPANY,
N.A., as Owner Trustee of the ACLC BUSINESS
LOAN RECEIVABLE TRUST 1998-2, acting
through AMRESCO COMMERCIAL
FINANCE, LLC, as Servicing Agent; and
ACFI 1998-2, LLC, an Idaho limited
liability company,**

       **Plaintiffs-Appellants,**

**v.**

**CITY OF GALLUP,**

       **Defendant-Appellee,**

**and**

**HANS J. PIRCHER, Individually; GRAND
GAL, INC.; and TAXATION AND REVENUE
DEPARTMENT OF THE STATE OF
NEW MEXICO,**

       **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY
Louis E. DePauli, Jr., District Judge**

Holland & Hart, LLP
Mark F. Sheridan
Jacqueline E. Davis
Santa Fe, NM

for Appellants

1

Jane B. Yohalem
Santa Fe, NM

R. David Pederson
Gallup, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}**    District courts have discretion under Rule 1-060(B) NMRA to grant relief from final judgments.  In this foreclosure action, the district court exercised this discretion to address an issue of first impression:  whether a lodger's tax lien under Section 3-38-18.1 of the Lodgers' Tax Act, NMSA 1978, §§ 3-38-13 to -24 (1969, as amended through 2000), has statutory priority over a previously filed deed of trust lien (deed of trust).  We hold that the district court did not abuse its discretion, and we agree with its legal conclusion that the lodger's tax lien has a statutory priority over the deed of trust.  In addition, the district court concluded that a utility lien filed by the City was entitled to priority over the Bank's deed of trust lien.  As to this issue, the Bank concedes that under the operative statutes the City's utility lien is entitled to priority.  However, it argues that since the City did not assert its priority before the final judgment was filed and that there are no grounds which justified reopening the judgment under Rule 1-060(B), that we should reverse as to this issue as well.  We reject this argument because the district court did not abuse its discretion in granting relief from the final judgment under Rule 1-060(B).  We therefore affirm.

**BACKGROUND**

**{2}**    This appeal arises out of an action brought by the Bank to foreclose on a promissory note secured by a deed of trust on a motel located in Gallup, New Mexico.  The City was named as a defendant because it had recorded liens on the property for delinquent lodger's taxes and utility service charges.  The City not only did not dispute that its liens were junior and inferior to the Bank's deed of trust, but affirmatively stated that it was "informed and believes [that the liens] are junior and inferior to the [d]eed of [t]rust."  The Bank filed an unopposed motion for summary judgment seeking foreclosure judgment and a declaration that its rights to the property were superior to those of the City.  The Bank prepared a foreclosure judgment, approved by the City, which ordered that the property be sold to satisfy the Bank's judgment and further declared that the City's liens were junior and inferior to the Bank's deed of trust.  The foreclosure judgment, being approved by all the parties, was filed by the district court.

**{3}**    The parties then stipulated to the entry of an amended foreclosure judgment (final judgment), which was again approved by the City as to form.  The final judgment was also approved by all the parties and was filed by the district court.  The final judgment ordered that the judicial sale of the property would be postponed so that a sale to the Navajo Nation could be pursued, and it corrected the amount owed to the Bank and the redemption rights

2

of the obligor under the note. The Navajo Nation Tribal Council had approved the purchase of the property in a special session, but it was subsequently vetoed by the Navajo Nation's president. If the sale to the Navajo Nation had taken place, the City claims that it would have resulted in sufficient funds to pay the claims of all the parties, including the City's. The final judgment also reiterated that the City's liens were junior and inferior to the deed of trust.

**{4}** Sixty-five days after entry of the final judgment, the City filed a motion under Rule 1-060(B)(1) and (6), seeking to correct the final judgment. The City asserted that the final judgment was legally incorrect because its lodger's tax and utility liens had statutory priority over the deed of trust pursuant to NMSA 1978, Sections 3-36-1 and -2 (1981), and Section 3-38-18.1(B). Moreover, the City stated that it had inadvertently failed to assert the priority status of the liens because it believed its claim would be paid in its entirety from the sale of the property to the Navajo Nation. According to the City, once the sale to the Navajo Nation failed, it became apparent that a judicial sale would not provide enough money to pay all the claims and that the City's priority to payment had become critical. The Bank opposed the motion on various grounds, which we subsequently discuss.

**{5}** The district court agreed with the City that its liens had statutory priority over the Bank's deed of trust, and it ruled that the City's motion would be granted without specifying whether the motion was granted under Rule 1-060(B)(1) or (6). A formal order was entered that granted the City's Rule 1-060(B) motion and further ordered that the City's lodger's tax and utility liens had statutory priority over the deed of trust. The Bank appeals.

**DISCUSSION**

**I.      The City's Rule 1-060(B) Motion Was Timely Filed**

**{6}** Asserting that the district court granted the City's motion based on a legal error pursuant to Rule 1-060(B)(1), the Bank contends that the district court had no jurisdiction to do so. Assuming this argument presents a question of jurisdiction, we address the merits. *See* Rule 12-216(B) NMRA (providing that jurisdiction challenges may be raised for the first time on appeal); *see also Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[I]t is incumbent upon the appellate Court to raise jurisdictional questions sua sponte when the court notices them."). We review this issue de novo. *Armijo v. Pueblo of Laguna*, 2011-NMCA-006, ¶ 9, 149 N.M. 234, 247 P.3d 1119 (stating that the "determination of whether jurisdiction exists is a question of law which an appellate court reviews de novo").

**{7}** The Bank argues from language in *Resolution Trust Corporation v. Ferri*, 120 N.M. 320, 901 P.2d 738 (1995), and *Deerman v. Board of County Commissioners*, 116 N.M. 501, 864 P.2d 317 (Ct. App. 1993), that all Rule 1-060(B)(1) motions asserting legal error must be filed within the time permitted for an appeal. *Ferri*, 120 N.M. at 323, 901 P.2d at 741; *Deerman*, 116 N.M. at 506, 864 P.2d at 322. Since the City's motion was filed sixty-five days after the final judgment, the Bank asserts that it was untimely. *See* Rule 12-201(A)(2) NMRA (stating that a notice of appeal must be filed within thirty days after the filing of the

3

final judgment).  We disagree.

**{8}**     The Bank asks this Court to read *Ferri* and *Deerman* as preventing all Rule 1-060(B)(1) motions after the time permitted for an appeal has lapsed.  However, we do not read *Ferri* and *Deerman* so broadly.  These authorities hold that a Rule 1-060(B)(1) motion cannot be filed after the period permitted for a direct appeal has lapsed only when the motion is used as a substitute for a direct appeal or as a means of circumventing the time period allowed for a direct appeal. *See Ferri*, 120 N.M. at 323, 901 P.2d at 741 (stating that Rule 1-060(B) should not be used as a substitute for appeal nor as a means of circumventing the appeals process); *Deerman*, 116 N.M. at 506, 864 P.2d at 322 (stating that it is well-settled in New Mexico law that Rule 1-060(B)(1) is not to be used as a substitute for appeal).

**{9}**     However, in this case, the City could not have filed a direct appeal of the amended judgment at the time it was filed by the district court because it was based upon a stipulation by the parties.  The City never asked the district court to rule on the applicability of Section 3-38-18.1 until it filed the Rule 1-060(B)(1) motion.  As a result, before the motion, the City was unable to appeal the priority issue to this Court. *See* Rule 12-216(A) (stating that to preserve a question for review, a party must "fairly invoke" a ruling by the district court); *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 14, 125 N.M. 748, 965 P.2d 332 (stating that this Court will not address arguments not preserved for review).  Therefore, the district court's consideration of the City's motion was not used to circumvent the appeals process.

**{10}**     Assuming the City's motion was granted under Rule 1-060(B)(1), we hold that the City's motion was timely. *See* Rule 1-060(B)(6) (stating that motions requesting relief from a judgment pursuant to Rule 1-060(B)(1) must be filed within one year of the judgment).

## II.     The District Court Did Not Abuse Its Discretion in Reopening the Case

**{11}**     The Bank argues that the district court abused its discretion in granting the City's motion because it characterizes the alleged error in the judgment as resulting from judicial error, which the Bank argues falls outside the ambit of "mistake" under Rule 1-060(B)(1).  We are not persuaded. *See Koppenhaver v. Koppenhaver*, 101 N.M. 105, 108, 678 P.2d 1180, 1183 (Ct. App. 1984) ("Precise nomenclature for the motion seeking relief from the finality of a judgment is not controlling; the court must look to the substance of the relief sought.").

**{12}**     The ultimate issue before us is whether the district court abused its discretion in amending the final judgment whether it was granted under either Rule 1-060(B)(1) or (6). *See Click v. Litho Supply Co.*, 95 N.M. 419, 420, 622 P.2d 1039, 1040 (1981) ("Relief under Rule [1-0]60 is discretionary with the trial judge and will be reviewed only for an abuse of that discretion.").  It is well-settled that to reverse the district court's ruling on a Rule 1-060(B) motion under the abuse-of-discretion standard, the district court's ruling must be "arbitrary, fanciful, or unreasonable." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 29, 128 N.M. 536, 994 P.2d 1154 (internal quotation marks and citation omitted).  In considering a motion under Rule 1-060(B), the district court should "be liberal in determining what

constitutes good cause to vacate a judgment so that the ultimate result will address the true merits and substantial justice will be done." *Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 51, 582 P.2d 819, 823 (1978); *see also Kinder Morgan CO2 Co., L.P. v. State Taxation & Revenue Dep't*, 2009-NMCA-019, ¶ 10, 145 N.M. 579, 203 P.3d 110 (same).

**{13}** In this case, there are no reasons for concluding that reopening the priority issue was "arbitrary, fanciful, or unreasonable." *Meiboom*, 2000-NMSC-004, ¶ 29 (internal quotation marks and citation omitted). The City asserted it initially contemplated that the sale to the Navajo Nation would result in its liens being paid in full, although its liens were deemed junior to the Bank's deed of trust. When the sale to the Navajo Nation failed, the City claimed it realized for the first time that it had inadvertently failed to recognize that its lodger's tax lien might have statutory priority. The City then brought the issue to the attention of the district court and candidly acknowledged to the district court that it had overlooked the issue, because it initially believed it was going to be paid. The Bank did not dispute these assertions and never asserted that the City acted in bad faith in failing to raise the arguments earlier or that the Bank would suffer any legal prejudice if the district court considered the City's motion. The City's motion raised an issue of first impression, and the parties were given an opportunity to fully present their arguments. The district court reopened the case and granted the City's motion only after carefully considering these circumstances and the arguments of both parties. For the foregoing reasons, we fail to see how the district court was arbitrary or unreasonable in deciding to address the merits of the priority issue, and we conclude that the district court did not abuse its discretion in amending the final judgment.

**{14}** The Bank also argues that the district court abused its discretion because the City failed to dispute throughout the case that its lien was inferior. We disagree. Even if we construe the City's failure to dispute whether its lien was inferior as a stipulation, a court may refuse to enforce a stipulation for good cause. *Ballard v. Miller*, 87 N.M. 86, 91, 529 P.2d 752, 757 (1974) (stating that "stipulations will be encouraged by the courts, and enforced by them, unless good cause is shown to the contrary" (internal quotation marks and citation omitted)). Good cause for granting relief from the terms of a stipulation is present when the agreement was entered into as the result of inadvertence, improvidence, or excusable neglect that the party seeking relief was reasonably diligent in doing so and that the prejudice to the opposing party is not greater than that to the applicant. *Id.* As we have already discussed, all these conditions are present in this case.

### III. The Plain Language of Section 3-38-18.1(B) Provides First Priority From Sale Proceeds to the City's Lodger's Tax Lien

**{15}** Since issues involving statutory interpretation are questions of law, we review de novo the question of whether Section 3-38-18.1 provides first priority of payment from the sale proceeds to the City's lodger's tax lien. *See Sonic Indus. v. State*, 2006-NMSC-038, ¶ 7, 140 N.M. 212, 141 P.3d 1266 (stating that questions of statutory interpretation are questions of law that are reviewed de novo).

**{16}** The Lodgers' Tax Act provides that municipalities or counties may collect taxes on

the rent paid by consumers for certain types of lodgings, such as hotel rooms, occupied for less than thirty days. *See* §§ 3-38-14, -15, -16. The Lodgers' Tax Act further provides that persons providing the service of furnishing lodgings, called vendors for purposes of the Act, are responsible for collecting the lodger's taxes from consumers and are liable for the payment of delinquent lodger's taxes plus interest and penalties. *See* §§ 3-38-14, -17, -18. Section 3-38-18.1 then governs one way in which municipalities or counties may enforce payment of delinquent lodger's taxes as against vendors.

**{17}**     Section 3-38-18.1(A), (B) provides:

> A.     The occupancy tax imposed by a municipality or county constitutes a lien in favor of that municipality or county upon the personal and real property of the vendor providing lodgings in that municipality or county. The lien may be enforced as provided in Sections 3-36-1 through 3-36-7 NMSA 1978. *Priority of the lien shall be determined from the date of filing.*

> B.     Under process or order of court, no person shall sell the property of any vendor without first ascertaining from the clerk or treasurer of the municipality or county in which the vendor is located the amount of any occupancy tax due the municipality or county. *Any occupancy tax due the municipality or county shall be paid from the proceeds of the sale before payment is made to the judgment creditor or any other person with a claim on the sale proceeds.*

(Emphasis added.)

**{18}**     The district court determined that Subsection (B) controls in this case, and we agree. When interpreting statutes, our guiding principle is to determine and give effect to legislative intent. *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 18, 128 N.M. 309, 992 P.2d 860. In ascertaining the intent of the Legislature, we are assisted by classic canons of statutory construction. *Id.* The first of these is that a court is required to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153; *Bd. of Comm'rs of Doña Ana Cnty. v. Las Cruces Sun-News*, 2003-NMCA-102, ¶ 19, 134 N.M. 283, 76 P.3d 36 (noting that where language is clear, appellate courts "give the statute its plain and ordinary meaning and refrain from further interpretation").

**{19}**     Section 3-38-18.1(A) creates a lodger's tax lien and prescribes the mechanisms municipalities or counties may use to enforce the lodger's tax lien. *See* NMSA 1978, §§ 3-36-4 to -5 (1965), -6 (1977) (providing types of foreclosure methods to enforce municipal liens). Section 3-38-18.1(B) states that it applies to situations where any person, such as the Bank, attempts to sell the property of a vendor under process or order of the court. Section 3-38-18.1(B) clearly governs judicial sales pursuant to foreclosure actions initiated by

6

someone other than a municipality or county. In such circumstances, Section 3-38-18.1(B) further provides that any lodger's taxes owed must first be paid to the municipality or county before any of the other parties' claims are paid.

{20} When read together, Subsections (A) and (B) indicate a legislative intent of Section 3-38-18.1 that when named as a defendant in a deed of trust foreclosure action, as in this case, a municipality can choose not to proceed by way of enforcement through foreclosure as provided in Sections 3-36-1 through -6 together with Subsection (A)'s priority language, but can rely instead on Subsection (B) for priority of payment from the proceeds of sale. This is the approach the City sought were it to be given a second chance under Rule 1-060(B). The City was appropriately given that chance. We therefore hold that when Subsections (A) and (B) are read in tandem the priority language in Subsection (A) was intended to apply where a municipality is enforcing a lodger's tax lien as provided by Sections 3-36-1 through -6 and not to apply when, as here, a municipality chooses to enforce its lien under Subsection (B)'s first priority on proceeds of sale in a pending deed of trust foreclosure action. Thus, in conformity with the ruling of the district court, the applicable subsection is Subsection (B) and the City was entitled to payment from the sale proceeds before the Bank received any proceeds.

{21} The Bank argues that this interpretation of Section 3-38-18.1 is contrary to the "first in time is first in right" doctrine and common law principles that deny municipal taxes priority over other encumbrances. We are unpersuaded because the plain language of Section 3-38-18.1 controls. *See United States v. Atlantic Mun. Corp.*, 212 F.2d 709, 711 (5th Cir. 1954) (stating that the "first in time is the first in right" doctrine is widely accepted and applied, absent legislation to the contrary); *Sims*, 1996-NMSC-078, ¶ 23 ("[W]hen legislation directly and clearly conflicts with the common law, the legislation will control because it is the most recent statement of the law.").

{22} In sum, Section 3-38-18.1(A) involves the enforcement of lodger's liens by municipalities, while Section 3-38-18.1(B) controls situations where parties, besides foreclosing municipalities, are selling a vendor's property through court order. Therefore, Subsections (A) and (B) are not in conflict since they govern different circumstances.

{23} The Bank also urges us to follow federal and Maryland cases and to conclude that the City's lodger's tax lien only has priority against unsecured creditors. We decline to do so because those cases are inapplicable. *See Brent v. Bank of Wash.*, 35 U.S. (10 Pet.) 596, 605-09, 615 (1836) (holding that the federal priority statute does not give the United States a lien but a legal right to payment); *Conard v. Atl. Ins. Co. of N.Y.*, 26 U.S. (1 Pet.) 386, 444 (1828) (stating that the priority of the United States to payment from an insolvent's assets cannot displace a specific and perfected lien since the "priority is not of itself equivalent to a lien"); *Wethered v. Alban Tractor Co.*, 168 A.2d 358, 362-63 (Md. 1961) (stating that the Maryland priority statutes "do no more than establish a priority of payment for unpaid taxes . . . . [however, t]his does not establish a lien" (citation omitted)). Section 3-38-18.1(A) does not provide merely a right to payment but explicitly creates a lodger's tax lien that is entitled

7

to priority. *See* 72 Am. Jur. 2d *State and Local Taxation* § 899 (1974) (providing that some courts will give priority to state tax liens over other encumbrances when there is a clear statement of legislative intent that such preference be given).

**CONCLUSION**

**{24}**    For the foregoing reasons, we affirm.

**{25}    IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *Wells Fargo Bank, N.A. v. City of Gallup*, No. 29,198**

| | |
|---|---|
| **CM** | **COMMERCIAL LAW** |
| CM-FI | Financial Institutions |
| CM-ST | Secured Transactions |
| | |
| **JG** | **JUDGES** |
| JG-AD | Abuse of Discretion |
| | |
| **JM** | **JUDGMENT** |
| JM-FJ | Final Judgment |
| JM-PJ | Post Judgment Relief |
| JM-RJ | Reopening of Judgment |
| | |
| **PR** | **PROPERTY** |
| PR-DT | Deed of Trust |
| PR-FC | Foreclosure |
| PR-PT | Property Taxation |
| PR-TX | Tax Sale |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |

ST-RC                  Rules of Construction

**TX**                   **TAXATION**
TX-LT                 Lodgers' Tax
TX-TL                 Tax Lien
TX-TS                 Tax Sale