# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **DECEMBER 1, 2016**

**NO. 34,253**

**L.D. MILLER CONSTRUCTION, INC.,**

Plaintiff-Appellee,

**v.**

**STEPHEN KIRSCHENBAUM
and BARBRO KIRSCHENBAUM,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge**

Thomas E. Chism
Albuquerque, NM

for Appellee

Coberly & Martinez, LLLP
Todd A. Coberly
Santa Fe, NM

for Appellants

**OPINION**

**ZAMORA, Judge.**

{1}     In this case, we are presented with the question—can an arbitrator designated by the parties to conduct an arbitration be disqualified by the American Arbitration Association (AAA) for cause if the parties do not also explicitly agree in writing that the arbitrator shall function as a non-neutral arbitrator? The district court ruled that he could be disqualified. We affirm.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

{2}     In the fall of 2011, Stephen and Barbro Kirschenbaum hired L.D. Miller Construction Company (Miller) to do concrete and framing work for a garage and run-in shed on the Kirschenbaums' property in Santa Fe, New Mexico. Miller contends the construction project was finished in late fall. However, the Kirschenbaums were apparently unsatisfied with the work and hired other contractors to correct Miller's work.

{3}     On December 2, 2011, Miller presented the Kirschenbaums with an invoice for $28,576.46, for its work on their property. The Kirschenbaums paid Miller $15,000 toward the balance owed, leaving an outstanding balance of $13,576.46, which the Kirschenbaums refused to pay. There is an allegation that the Kirschenbaums also

kept possession of a table saw, tools, and other building materials belonging to Miller valued at approximately $800.

{4} On December 20, 2011, Miller and the Kirschenbaums entered into a written Arbitration Agreement. The full text of the Agreement is:

> Contractor and Owner agree to binding arbitration under AAA (American Arbitration Association) for any dispute (claim, work, material, etc.) between Contractor and Owner at the following location:
>
> Hacienda del Cerezo
> 100 Camino del Cerezo
> Santa Fe, New Mexico 87506
>
> (And including or for: Hacienda del Cerezo, Ltd., Stephen/Barbro Kirschenbaum)
>
> Contractor and Owner agree that the designated arbitrator shall be Roger Lengyel [(Lengyel)].

{5} In April 2013 Miller filed a complaint in the First Judicial District Court against the Kirschenbaums for debt and money due concerning its work on the Kirschenbaums' property. The Kirschenbaums were served with a summons by certified mail. Though the Kirschenbaums responded informally to Miller's counsel, they did not enter a timely appearance or file a timely answer or other responsive pleading with the district court. In June 2013 Miller filed a motion for default judgment. No response to the motion was filed by the Kirschenbaums and as a result,

the district court issued an order granting Miller's motion for default judgment, finding the Kirschenbaums liable for $16,153.98.

{6}     Represented by counsel, the Kirschenbaums promptly filed an answer to Miller's original complaint alleging as an affirmative defense that Miller's court action was barred by the Arbitration Agreement. The Kirschenbaums also moved to compel arbitration and to vacate the default judgment. In November 2013, the court issued an order granting the Kirschenbaums' motion to vacate the default judgment and granting their motion to compel arbitration. In particular, the order stated:

> [T]he [o]rder of [d]efault [j]udgment entered on July 2, 2013[,] is vacated, these proceedings are stayed, and that the parties are compelled to arbitrate this matter pursuant to the terms of the December [20,] 2011[, A]rbitration [A]greement, requiring binding arbitration under the [AAA] with . . . Lengyel as the designated arbitrator.

{7}     Apparently the arbitration did not progress smoothly. On January 22, 2014, Miller sent a letter to AAA requesting disqualification and removal of Lengyel as arbitrator "pursuant to [AAA] Rule []20" for refusing to perform his duties pursuant to required procedures, as well as for lack of independence, i.e., non-neutrality, which was not part of the parties' agreement. In particular, Miller alleged that "ground rules" set by Lengyel to govern the arbitration were mere "recitals" of the Kirschenbaums' desire to delay the arbitration process, exclude AAA intervention, and limit communication between the parties and Lengyel. Miller also asserted that

it had become apparent that Lengyel was having ex parte communications with the Kirschenbaums.

{8} In response, the Kirschenbaums sent a letter to the AAA contending that Lengyel could not be disqualified pursuant to the district court's order compelling arbitration and designation of Lengyel as the parties' arbitrator. In addition, the Kirschenbaums argued that the parties intended to appoint a non-neutral arbitrator not subject to AAA Rule 20.

{9} AAA responded to Miller's complaint stating: "[i]n light of the [c]ourt [o]rder requiring binding arbitration under the [AAA] with . . . Lengyel as the designated arbitrator, [Miller] may seek clarification from the [c]ourt as to AAA's authority to address this request for removal." Miller filed a motion with the district court seeking clarification of its order, arguing that all AAA rules had been incorporated into the Arbitration Agreement. At the hearing on Miller's motion to clarify, the court observed:

> When I look at the contract that the parties entered into for the purpose of arbitration, I note that Mr. [Lengyel] is designated but not required [to serve as arbitrator]. What is required is that the parties arbitrate under the rules of AAA. . . .
>
> If it were the other way around then potentially the AAA rules would have no meaning. If the arbitrator could as a designated arbitrator . . . ignore or avoid those rules at his discretion then that would put at issue the AAA rules and their requirement of the AAA rules under the parties' agreement.

4

{10}    The court issued an order on June 4, 2014,[1] concluding that "it was the parties' intent that the arbitration between them would be subject to all the rules and procedures of the [AAA], including the rule regarding disqualification of an arbitrator[,]" and ordered that AAA "has the authority to disqualify designated arbitrator . . . Lengyel, if the AAA determines that such a disqualification is warranted under its rules and procedures."

{11}    On July 17, 2014, the Kirschenbaums moved, pro se, for reconsideration of the June 4 order. In pertinent part, the Kirschenbaums argued, "[n]ot disclosed by prior counsel was that both parties specifically discussed and agreed to use . . . Lengyel, an architect very well known to them both—which was paramount to anything else. Using the procedures of the AAA was merely an adjunct to their desire to have Mr. Lengyel decide any dispute." The Kirschenbaums requested an order finding the AAA rule providing for the removal and substitution of an arbitrator did not apply to the parties' arbitration and order the parties to arbitrate with Lengyel serving as arbitrator. In September 2014 AAA decided to remove Lengyel from the parties' case.

{12}    Two months later, in November 2014, the court denied the Kirschenbaums' motion for reconsideration. The Kirschenbaums filed their notice of appeal on November 14, 2014.

---

[1]On June 2, 2014, the court issued an order permitting counsel for the Kirschenbaums to withdraw from the case for professional reasons.

## II.   DISCUSSION

### A.   The Kirschenbaums' Appeal of the District Court's Order Denying Their Motion for Reconsideration Was Timely Filed

{13}   The Kirschenbaums themselves note a potential problem with the timeliness of their appeal and the related issue of the scope of our review. The Kirschenbaums' motion for reconsideration was filed more than thirty days after the order it addressed. As such, the motion was filed after the deadline for filing an appeal to this Court from the district court's order. *See* Rule 12-201(A)(2) NMRA. Our case law is clear that Rule 1-060(B) NMRA motions brought "to correct an error of law by the district court must be filed before the expiration of the time for appeal." *Deerman v. Bd. of Cty. Commr's*, 1993-NMCA-123, ¶ 16, 116 N.M. 501, 864 P.2d 317; *see Resolution Tr. Corp. v. Ferri*, 1995-NMSC-055, ¶ 9, 120 N.M. 320, 901 P.2d 738. *Deerman* held that district courts lack authority to grant relief pursuant to a "belated" Rule 1-060(B) motion, absent extraordinary circumstances. *Deerman*, 1993-NMCA-123, ¶¶ 21, 23-24. Given the holding of *Deerman*, Miller argues that the Kirschenbaums' notice of appeal is too late to capture the order entered in June 2014 and the appeal should thus be dismissed as untimely. We disagree.

{14}   As we noted in *Wells Fargo Bank, N.A. v. City of Gallup*, 2011-NMCA-106, ¶ 8, 150 N.M. 706, 265 P.3d 1279, the rule stated in *Deerman* is not absolute. In *Wells Fargo Bank*, we made clear that the rule in *Deerman* should be applied "only

when the [Rule 1-060(B)(1)] motion is used as a substitute for a direct appeal or as a means of circumventing the time period allowed for a direct appeal." *Wells Fargo Bank*, 2011-NMCA-106, ¶ 8.

{15} The timeliness of the Kirschenbaums' motion for reconsideration was not litigated below. We are left with the real-world circumstance that the district court considered the motion and denied it on its merits. Part of the Kirschenbaums' motion for reconsideration detailed the breakdown of their relationship with the attorney who represented them at the hearing on Miller's motion, and their unsuccessful efforts to hire new counsel before they filed their pro se motion. Given their unrebutted circumstance, the district court would have been within its discretion to determine that the late motion was not simply an attempt to evade the time for appeal. Applying our presumption in the correctness of district court actions, we will not engage an independent assessment of the Kirschenbaums' motives. *Cf. Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the [district] court's actions."). This approach also furthers our policy of construing our appellate rules liberally so as to determine appeals on their merits. *See Wakeland v. N.M. Dep't of Workforce Solutions*, 2012-NMCA-021, ¶ 7, 274 P.3d 766 (noting that this Court has adopted a "liberal approach" to the interpretation of the Rules of Appellate Procedure "in

order to further a policy of hearing appeals on their merits rather than dismissing them on technical grounds").

{16} "Appellate courts will not interfere with the action of the [district] court in vacating a judgment [under Rule 1-060(B)]" or with an appeal from the denial of a Rule 1-060(B) motion, except upon a showing of abuse of discretion by the district court. *Phelps Dodge Corp. v. Guerra*, 1978-NMSC-053, ¶ 20, 92 N.M. 47, 582 P.2d 819; *James v. Brumlop*, 1980-NMCA-043, ¶ 9, 94 N.M. 291, 609 P.2d 1247. The district court did not abuse its discretion in ruling on the Kirschenbaums' motion to reconsider under Rule 1-060(B). For the foregoing reasons, we hold the Kirschenbaums timely appealed the district court's denial of their motion to reconsider.

**B.      The District Court Did Not Abuse Its Discretion in Denying the Kirschenbaums' Motion to Reconsider**

**1.      Standard of Review**

{17} Generally, we review a district court's ruling under Rule 1-060(B) for abuse of discretion. *Edens v. Edens*, 2005-NMCA-033, ¶ 13, 137 N.M. 207, 109 P.3d 295 (holding that to reverse the district court under an abuse of discretion standard "it must be shown that the court's ruling exceeds the bounds of all reason or that the judicial action taken is arbitrary, fanciful, or unreasonable" (omission, internal quotation marks, and citation omitted)). However, insofar as determining whether the

8

district court abused its discretion in denying the Kirschenbaums' Rule 1-060(B) motion requires construction of the Arbitration Agreement, we proceed de novo. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 (noting that the interpretation of an arbitration agreement is an issue the appellate courts review is de novo); *W. Farm Bureau Ins. Co. v. Carter*, 1999-NMSC-012, ¶ 4, 127 N.M. 186, 979 P.2d 231 (recognizing that the contract interpretation is a matter of law reviewed de novo).

{18} Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law. *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478. Accordingly, we apply New Mexico contract law in interpretation and construction of the Arbitration Agreement. We note that the parties do not argue that the Arbitration Agreement is ambiguous. Neither of them provided any testimony as to their intent or thoughts with regard to the wording of the Agreement. As such, our job is a pure legal question of interpretation and construction: what do the words of the Agreement mean and what is their legal effect? *See Fashion Fabrics of Iowa, Inc. v. Retail Inv'rs Corp.*, 266 N.W.2d 22, 25 (Iowa 1978) (noting that the "[i]terpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect").

## 2. Rivera Does Not Control

{19}    The Kirschenbaums contend that pursuant to the *Rivera* "integral[-]ancillary" test, the second clause of the Arbitration Agreement, designating Lengyel "shall" serve as the parties' arbitrator, is integral, while the first clause, providing the parties agree to arbitrate "under AAA" unmodified by mandatory contractual language like "must" or "shall," is ancillary. We disagree.

{20}    The Supreme Court's application of the "integral[-]ancillary" test in *Rivera* was limited to the fact-specific issue of the unavailability of a designated institutional arbitration provider that the parties clearly intended to use exclusively in resolving disputes between them. *Rivera* addressed a consumer dispute arbitration agreement involving the National Arbitration Forum (NAF) in the wake of the dissolution of its consumer dispute division. 2011-NMSC-033, ¶ 20. The language of the parties' agreement demonstrated an intent to designate NAF as the arbitration provider and to arbitrate exclusively under NAF's rules and procedures. *Id.* ¶¶ 3, 29 (noting that the agreement provided the parties "shall" agree they arbitrate under NAF rules and procedures). The NAF rules and procedures included a rule providing that only an NAF arbitrator could administer the NAF rules and procedures. *Id.* ¶ 35. The Court reasoned that the parties' intent and the fact that only an NAF arbitrator could administer the NAF rules demonstrated that arbitration under NAF was integral to the

parties' agreement. *Id.* ¶ 38. However, because of NAF's consumer dispute division's dissolution, it was impossible for the parties to arbitrate under NAF's rules and procedures. *Id.* ¶ 35. As a result, the Court determined it would violate an integral term of the parties' agreement to compel them to arbitrate disputes under an arbitration provider other than NAF and the NAF rules and procedures. *Id.* ¶¶ 55-56 (striking the parties' arbitration provisions in their entirety).

{21}     *Rivera* did not consider the fact-specific issues presented in this case: interpretation of arbitration agreement terms naming an individual arbitrator to resolve the parties' disputes "under AAA," an existing institutional arbitration provider with a set of rules controlling proceedings held under its auspices. In contrast, only one material provision was at issue in *Rivera*—NAF "shall" serve as the parties' arbitration provider. A particular arbitrator was not named in the agreement to serve as the parties' designated arbitrator, and so the Court did not consider this variable in *Rivera*. Here, AAA is available to administer the parties' arbitration, unlike *Rivera*. Also, the AAA rules provide that in certain circumstances, a designated arbitrator may be disqualified and replaced. Interpretation of the Arbitration Agreement in this case goes beyond the scope of the Court's analysis in *Rivera*. *See State v. Sanchez*, 2015-NMSC-018, ¶ 26, 350 P.3d 1169 (holding that "cases are not authority for propositions not considered" (internal quotation marks

and citation omitted)). Accordingly, we decline to adopt the Kirschenbaums' interpretation of the Arbitration Agreement under *Rivera*. To do so would unreasonably treat as equivalent an unavailable arbitration provider and a disqualifiable arbitrator. *State ex rel. Udall v. Colonial Penn Ins. Co.*, 1991-NMSC-048, ¶ 30, 112 N.M. 123, 812 P.2d 777 ("In construing a contract, the law favors a reasonable rather than unreasonable interpretation.").

{22}    In addition, *Rivera* did not use the integral-ancillary test in *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000), to gauge the relative importance of two contract provisions; rather, it used it to determine whether a contract condition was so central to the parties' intent in contracting that to arbitrate without it would be to "eviscerate the core of the parties' agreement." *Rivera*, 2011-NMSC-033, ¶ 38 (internal quotation marks and citation omitted). Interpretations of the meaning and relative value of contract provisions is best left to established contract interpretation and construction doctrines, with their overarching goal of enforcing contracts according to their terms, and eschewing the nullification of provisions.

**C.    The District Court Correctly Interpreted the Terms of the Arbitration Agreement**

{23}    The district court found in its June 4, 2014, order "[t]hat it was the parties' intent that the arbitration between them would be subject to all the rules and

procedures of the [AAA], including the rule regarding disqualification of an arbitrator." We agree with the district court that this is the legal effect of the parties' chosen language.

{24} The first clause of the Arbitration Agreement provides: "Contractor and Owner agree to binding arbitration under AAA." The most reasonable construction of this language is that "under AAA" incorporates all of the AAA rules normally applicable to proceedings held under AAA's auspices. *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 67, 299 P.3d 844 (holding that a court may "impl[y] a reasonable term to cover" an omitted logistical issue if the implied term is consistent with the language of the agreement (internal quotation marks and citation omitted)); Am. Arb. Ass'n, Rule 2 (2009) (providing when parties agree to arbitrate under the AAA "[r]ules, or when they provide for arbitration by the AAA and an arbitration is initiated under th[e AAA r]ules, they thereby authorize AAA to administer the arbitration"). Additionally, there is no language of limitation in the Arbitration Agreement demonstrating intent to limit the scope of the AAA rules' application to the parties' arbitration. *Cf. Centex/Worthgroup, LLC v. Worthgroup Architects, L.P.*, 2016-NMCA-013, ¶ 18, 365 P.3d 37 (holding that "where a subcontract contains words of definite limitation, those words are given effect and the incorporation of the prime contract is limited accordingly" (internal quotation marks and citation

omitted)). As a result, the language of the Arbitration Agreement reasonably demonstrates an intent to arbitrate under all of the AAA rules.

{25}     The second clause of the Arbitration Agreement provides: "Contractor and Owner agree that the designated arbitrator shall be . . . Lengyel." Employment of the language that the parties agree they shall designate Lengyel as their arbitrator is strong evidence of intent to appoint the specified person. *See Rivera*, 2011-NMSC-033, ¶ 31; Am. Arb. Ass'n, Rule 15(a) (2009) (providing that "[i]f the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed"). However, there is no indication in the language of the Arbitration Agreement that the parties intended that Lengyel would serve as a non-neutral arbitrator contrary to American Arbitration Association, Rule 20 (2009). *See ConocoPhillips*, 2013-NMSC-009, ¶ 67 (recognizing that the "[c]ourts cannot create a new agreement for the parties" (internal quotation marks and citation omitted)). Under the AAA rules, arbitrators are required to adhere to all of the AAA rules generally. Am. Arb. Ass'n, Rule 8 (2009). Arbitrators, including arbitrators specifically designated by the parties, are presumed and expected to function as neutral arbitrators, unless the parties specifically agree in "writing" that a specifically designated arbitrator shall function as a non-neutral arbitrator. Am. Arb. Ass'n, Rule 20(a) (2009). In all other circumstances, an

14

arbitrator, including an arbitrator specifically designated by parties in an agreement, may be disqualified under the AAA rules for non-neutrality. Am. Arb. Ass'n, Rule 20 (2009). As recognized by the district court, "[i]f the arbitrator could . . . ignore or avoid [the] rules at his discretion then that would put at issue the AAA rules" and potentially cause them to have no meaning. Lengyel should thus be treated as a neutral arbitrator based on the absence of an explicit agreement to appoint him as a non-neutral arbitrator.

{26} The Kirschenbaums argue the parties intended to designate Lengyel as a non-neutral arbitrator based on both parties' long relationships with him, his background as an architect, and his lack of legal or mediation training. However, there is simply no evidence in the record and no indication in the Arbitration Agreement that such a proposition made it into the final agreement. Accordingly, Lengyel will be treated as a neutral arbitrator. Lengyel was not explicitly denominated as a non-neutral arbitrator, and the Kirschenbaums failed to demonstrate by clear and convincing evidence he was intended to serve as a non-neutral arbitrator. *See Borst v. Allstate Ins. Co.*, 2006 WI 70, ¶ 43, 717 N.W.2d 42 (holding that the arbitrators—whether designated by the parties or not—are presumed to be neutral and impartial in the absence of clear and convincing evidence in the parties' agreement to the contrary).

**D.** **The District Court's Denial of the Kirschenbaums' Motion for Reconsideration Was Not Unreasonable, Arbitrary, or Fanciful**

{27}   The most natural construction of the Arbitration Agreement is that the parties intended to arbitrate disputes between them concerning Miller's construction work under all of the AAA rules, with Lengyel serving as a neutral arbitrator. To interpret the Arbitration Agreement designating Lengyel to trump the AAA rule permitting replacement of a neutral arbitrator in certain circumstances would risk rendering the AAA Rules meaningless. Accordingly, we hold that the district court did not act unreasonably, arbitrarily, or fanciful in denying the Kirschenbaums' motion for reconsideration. *See Edens*, 2005-NMCA-033, ¶ 13.

**III.   CONCLUSION**

{28}   For the foregoing reasons, we affirm.

{29}   **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**